

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

CCC:CMM/LTG/RAT                 *610 Federal Plaza*
F. #2015R02148                  *Central Islip, New York 11722*

February 22, 2018

<u>By ECF</u>

The Honorable Joan M. Azrack
United States District Judge
United States District Court
Eastern District of New York
924 Federal Plaza
Central Islip, New York 11722

        Re:   United States v. Edward Mangano, et al.
              <u>Criminal Docket No. 16-540 (S-1) (JMA)</u>

Dear Judge Azrack:

        The government respectfully moves to quash the trial subpoenas issued on behalf of defendant Edward Mangano ("Mangano") to Paul Weiss Rifkind Wharton & Garrison LLP ("Paul Weiss"), Anthony LaPinta, Esq. ("LaPinta") and Gary Schoer, Esq. ("Schoer"), seeking unredacted notes taken during proffer sessions of witnesses with the U.S. Attorney's Office.[1]  <u>See</u> Mangano Ltr (Dkt. No. 138).  A copy of the trial subpoena served upon LaPinta is annexed hereto as Exhibit A.  For the reasons set forth below, all such subpoenas should be quashed in their entirety and the defendant's motion to compel should be denied.

---

      [1] As the defendant failed to provide the government with copies of any trial subpoenas, the government is not aware of whether or not the defendant served similar subpoenas on other counsel.  To the extent the defendant has served similar subpoenas, the government, likewise, moves to quash those subpoenas as well.  To the extent that any attorney has provided documents in response to such a subpoena, the government seeks an order directing the defendant to provide the government with a copy of such a response forthwith.

APPLICABLE LAW

I.     Federal Rule of Criminal Procedure 17

The use of subpoenas pursuant to Rule 17 of the Federal Rules of Criminal Procedure ("Rule 17") in criminal cases is governed by the Supreme Court's decision in United States v. Nixon, 418 U.S. 683 (1974).  The Nixon Court principally recognized that the Rule 17 subpoena "was not intended to provide a means of discovery for criminal cases."  Nixon, 418 U.S. at 698.  It therefore held that, in order to require production of materials prior to trial, the moving party must show:

> (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general "fishing expedition."

Id. at 699-700 (citing Bowman Dairy Co. v. United States, 341 U.S. 214, 220 (1951)).  The Court specified that, "[a]gainst this background," the subpoena proponent must "clear three hurdles: (1) relevancy; (2) admissibility; [and] (3) specificity."  Id. at 700.

Applying those principles, including the requirement of establishing admissibility, the Nixon Court held that Rule 17 subpoenas could generally not be used to obtain impeachment materials.  See id. at 701 ("Generally, the need for evidence to impeach witnesses is insufficient to require its production in advance of trial.").

Finally, the Federal Rules of Criminal Procedure explicitly preclude the use of subpoenas to seek prior statements by prospective witnesses.  In particular, Rule 17(h) provides that "[n]o party may subpoena a statement of a witness or of a prospective witness under this rule.  Rule 26.2 [of the Federal Rules of Criminal Procedure ("Rule 26.2")] governs the production of the statement."  See Fed. R. Crim. P. 17(h).  Rule 26.2, in turn, provides that prior statements of witnesses are discoverable only after the witness has testified on direct examination.  See Fed. R. Crim. P. 26.2(a); 18 U.S.C. § 3500(a).

Applying Nixon and Rule 17(h), courts in this Circuit have routinely quashed pretrial defense subpoenas seeking prior statements by prospective government witnesses. See, e.g., United States v. Gioeli, et al., No. 08-CR-240 (BMC), Dkt. No. 1317, (E.D.N.Y. Dec. 8, 2011) (subpoena to county police department for "any and all records" relating to double homicide did not meet Nixon requirements as requesting party failed to demonstrate that materials sought are relevant, admissible and specific); United States v. Hatfield, 2009 U.S. Dist. LEXIS 60184, *2-*4 (E.D.N.Y. July 14, 2009) (quashing subpoena for witness statements because it failed to meet the Nixon requirements and violated Rule 17(h) and Section 3500); United States v. Vazquez, 258 F.R.D. 68, 72-73 (E.D.N.Y. 2009) (subpoena did not meet Nixon requirements and violated Rule 17(h)); United States v. Khan, 2009 U.S.

Dist. LEXIS 8692, *8-*9 (E.D.N.Y. Jan. 20, 2009) (quashing subpoenas for prior statements of potential government witnesses because they violated Rule 17 and Section 3500); United States v. Barnett, 2006 U.S. Dist. LEXIS 54170, *1-*2 (S.D.N.Y. Aug. 3, 2006) (subpoena for recorded MDC calls of potential government witness quashed because it failed to meet Nixon requirements); United States v. DiPietro, 2005 U.S. Dist. LEXIS 10351, *2-*3 (S.D.N.Y. May 25, 2005) (subpoena for recorded MDC calls by government witness quashed because "far beyond the bounds of permissible discovery in a criminal case"); United States v. Hutchinson, 1998 U.S. Dist. LEXIS 21426, *1-*6 (E.D.N.Y. Dec. 23, 1998) (subpoena for recorded MDC calls of a potential witness did not meet Nixon requirements because of lack of specificity) .

II.    Attorney Proffer Notes Protected by the Work Product Doctrine

Courts in this Circuit have routinely found that notes taken by witnesses' attorneys in proffer sessions are not discoverable and protected by the work product doctrine.

United States v. Arias, 373 F. Supp. 2d 311 (S.D.N.Y. Apr. 20, 2005) is instructive.  In Arias, a defendant in a criminal prosecution issued a subpoena to an attorney who represented a potential cooperating witness at his upcoming trial.  The defendant sought several categories of documents, including "notes or documents concerning proffers or meetings between the cooperating witness and the United States Attorney."  Id. at 312.  In granting the cooperating witness's attorney's motion to quash, the Court held that the notes taken by the attorney during proffer sessions with the cooperating witness were protected by the attorney work product doctrine.  Id.  The Court further noted that notes taken by a criminal defense lawyer during proffers between his or her client and the government are clearly taken in anticipation of litigation, whether those notes are taken at meetings before or after a cooperation agreement is consummated.  In so finding, the Court stated:

> [a] competent defense lawyer will take notes during such sessions in anticipation of issues that may arise at sentence, and to safeguard against the possibility that misunderstandings during the debriefings could result in revocation of the cooperation agreement and further prosecution of the client.  Clearly such materials are "created because of anticipated [indeed, existing] litigation, and would not have been prepared in a substantially similar form but for the prospect of litigation.

Id. (citing United States v. Adlman, 134 F.3d 1194, 1195 (2d Cir. 1998)); see also United States v. St. John, 267 Fed. Appx. 17, 22 (2d Cir. 2008) (holding that the district court did not abuse its discretion in finding the notes taken by attorneys at proffer sessions for cooperating witnesses to be protected for work product); United States v. Dessange, Inc., No. S2 99 CR 1182, 2000 WL 310345 (S.D.N.Y. Mar. 27, 2000) (holding that notes taken by a defense lawyer during a cooperating witness's proffers with the government are protected against discovery by the attorney work product doctrine).

Thus, the Arias Court determined that the lawyer's notes constituted work product and were, therefore protected from discovery and not subject to the subpoenas.

Further, since those notes may reflect the lawyer's "opinions, conclusions, mental impressions or legal theories, they are subject to a heightened standard of protection." Arias, 373 F. Supp. 2d at 312-13 (citing Upjohn Co. v. United States, 449 U.S. 383 (1981)); see also In re Grand Jury Subpoenas, 959 F.2d 1158, 1166 (2d Cir. 1992) (suggesting that in criminal cases in the Second Circuit, documents made by a defendant's attorneys in connection with the case are not discoverable).

<u>ANALYSIS</u>

As noted above, the defendant's trial subpoenas were, at the very least, served on attorneys representing three of the government's cooperating witnesses: Harendra Singh, Leonard Genova and Frederick Mei. According to the subpoena served on LaPinta, Singh's attorney, the defendant's trial subpoena seeks "[a]ll notes in your possession reflecting statements made by your client [] during proffer sessions with the United States District Attorney's Office for the Eastern District of New York and Southern District of New York." See Ex. A. The subpoenas should be quashed because they plainly fail to meet the Nixon requirements for a Rule 17 subpoena, violate Rule 17(h) and 18 U.S.C. § 3500, and seek documents and information protected by the work product privilege.

As an initial matter, instead of requesting relevant, admissible, and specific evidence – as is required by the plain language of the rule and prevailing caselaw – the defendant's Rule 17 subpoenas requests notes reflecting witness statements. The true purpose for those materials is plainly impeachment and nothing else.

Moreover, the subpoenas are subject to quashing under the Nixon requirements because Mangano has not demonstrated that "they are not otherwise procurable reasonably in advance of trial by exercise of due diligence." Nixon, 418 U.S. at 699-700. Indeed, like the defendant in Arias, Mangano has not demonstrated "an adequate showing of substantial need for the document[s] and an inability to obtain its contents elsewhere without undue hardship." Arias, 373 F. Supp. 2d at 313 (citing Aldman, 134 F.3d 1202-03). While Mangano is clearly interested in obtaining adverse witnesses' prior statements to the government, that interest is adequately met by the government's responsibilities under 18 U.S.C. § 3500. Notably, pursuant to its discovery obligations, the government has disclosed millions of pages of documents which pertain to the government's case against the defendants and has begun its production of § 3500 material well in advance of trial.

Further, the attorneys' notes of various proffer sessions are not verbatim transcripts of what each witness said, and the notes contain selective recordings of statements made by the witnesses. As previously indicated, Mangano will receive all proffer notes in the possession of the government of witnesses who will testify at trial. Thus, Mangano will receive adequate notice of such meetings pursuant to statute. He should not be allowed to pierce the relationship between a criminal defense attorney and client in order to exploit minor potential scrivener's errors between counsel and agents or impeach a witness off notes obtained from their own lawyer. The notes are important to both counsel in the proper representation of the respective clients so as to protect their current interests (i.e., to safeguard against subsequent prosecutions under 18 U.S.C. § 1001 and to prevent revocations of cooperation agreements)

4

and to assist in their representation at their sentences (i.e., to inform the Court of their assistance to the government).  Moreover, the notes may contain information discussed with the government that counsel may wish to revisit with their respective clients in private and outside the presence of the government.

Importantly, compliance with the defendant's subpoenas would trigger serious ethical and practical issues.  Assuming, for example, that the defense cross-examines the witness on something contained in the witness's attorney's notes that the witness testifies was never said during the proffer.  First, the defense attorney would be cross-examining the witness using the witness's own attorney to attack the witness's credibility.  A circumstance the witness surely did not envision when he retained a lawyer and had the lawyer accompany him to the proffer.  Further, after the witness is confronted with the statement and the witness denies making the statement, would the defense then be permitted to call the witness's own attorney to impeach him?  Clearly, such a scenario would be untenable and would eviscerate a criminal defense attorney's ability to effectively represent his client.

Lastly, even putting aside the subpoenas' failure to comply with the <u>Nixon</u> requirements, the subpoena violates Rule 17(h), which prohibits the use of a subpoena to obtain prior statements by a prospective witness.  For the same reasons, the subpoena violates Rule 26.2(a) and 18 U.S.C. § 3500(a), which govern the timing and substance of the production of prior witness statements.

CONCLUSION

For the foregoing reasons, the government respectfully submits that defendant Mangano's subpoenas be quashed in their entirety.

Respectfully submitted,

RICHARD P. DONOGHUE
United States Attorney

By:      /s/
Catherine M. Mirabile
Raymond A. Tierney
Lara Treinis Gatz
Assistant U.S. Attorney
(631) 715-7850/7849/7913

cc:    Clerk of the Court (by ECF)
       Counsel of Record (by email and ECF)

5