

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

LTG/CMM/RAT
F. #2015R02148

*610 Federal Plaza*
*Central Islip, New York 11722*

March 18, 2018

<u>UNDER SEAL</u>
<u>VIA HAND DELIVERY</u>

The Honorable Joan M. Azrack
United States District Judge
United States District Court
Eastern District of New York
924 Federal Plaza
Central Islip, New York 11722

      Re:    <u>United States v. Edward Mangano, et al.</u>
              <u>Criminal Docket No. 16-540 (S-1) (JMA)</u>

Dear Judge Azrack:

      The government submits this letter in response to defendant Edward Mangano's March 16, 2018 letter styled "motion to preclude," which is, in actuality, a motion for re-re-consideration of the Court's Orders of March 12, 2018 and March 13, 2018. In any event, the government respectfully urges the Court to deny the motion, as it is premised on an intentionally myopic view of the evidence and the law.

      At the outset, it is important to note that the defense was provided with the six Memoranda of Interview ("MOI") of Gulino on February 22, 2018, well in advance of the defendant's first response in opposition filed on February 27, 2018. These MOI's included every statement made by Gulino to the government, including all facts cited in the March 16, 2018 letter. We highlight this point, as the March 16, 2018 letter appears to unfairly suggest that the March 8, 2018 conference was the first word on these issues and that statements made at that conference were made "intentionally, artfully and with intent to conceal" certain facts.

      Before responding to the defendant's motion, it is important to review and underscore what the government expects the witnesses will testify concerning this issue.

## THE TESTIMONY

### Anthony Gulino

Anthony Gulino is expected testify as follows: Gulino was the owner and operator of Residential Fence Company ("RFC"), a fence installation business, and Laser Industries, Inc. ("Laser"), a subsidiary of RFC that provided full-service construction for municipalities, including Nassau and Suffolk County governments. Gulino knew defendant Mangano before Mangano became the Nassau County Executive in 2010. Rob Walker was the person who approached Gulino and asked for Gulino's help to "get Mangano elected." Then, in 2009, Gulino, either personally, or through friends, raised approximately $25,000 for Mangano's County Executive campaign. According to Gulino, he supported Mangano because Mangano was going to generate more Nassau County ("County") work projects on which Gulino's company Laser would bid. Gulino had many conversations with Mangano in which Mangano indicated that if elected he would generate municipal projects, which, in turn, would necessarily increase the number of jobs for which Gulion could bid and likely recieve.

After Mangano was elected, Gulino won a three-year County Requirements contract in 2011 for which Laser was paid in excess of $15,000,000.

In the late Summer/Fall 2012, Mangano complained to Gulino that the deck in his (Mangano's) backyard was unsafe, as an area of the railing was broken. Mangano then asked Gulino for assistance, thus, Gulino went to the Mangano's home, inspected the railing, and estimated that the cost of repair was approximately $3,000. The defendant agreed to hire Gulino, and the work was subsequently completed.

Thereafter, Gulino prepared an invoice for the work, totaling $3,585.45, and, on September 7, 2012, at approximately 9:00 a.m., Gulino went to Mangano's home with the invoice and an envelope that contained approximately $3,600. Gulino accepted a check from Mangano in the full amount of the work, but paid Mangano an equal amount in cash, essentially completing the work for free, while creating a paper trail that established otherwise. Gulino produced a copy of a check written by Mangano on September 7, 2012 for $3,584.46, made out to RFC. Gulino paid this bribe in order to get access to Mangano, if, and when, the need arose, and to enhance his reputation in the County by making it apparent that he had a "relationship" with the County Executive.

Thereafter, in September 2014, in anticipation of the expiration of the 2011 contract, the County called for bids for a new requirements contract, and while Laser submitted a bid, it was not awarded the contract.

### Harendra Singh

Harendra Singh is expected to testify that the defendant Edward Mangano called him at approximately 9:30 a.m. on a Friday morning, when it was warm outside, and, at Mangano's insistence, they agreed to meet. Thereafter, at approximately 10:00 a.m., Singh

got into Mangano's car and Mangano immediately handed Singh an envelope containing approximately $3,600 in cash. Mangano appeared panicked and asked Singh if Singh could exchange the bills in the envelope for different bills. When Singh inquired why, Mangano stated that he had recently had white fencing put around his home by Anthony Gulino's business, RFC, and, while he (Mangano) paid RFC for the work by check, that morning Gulino had given him (Mangano) the money back in cash. Mangano said he did not want to be caught with the bills given to him by Gulino and asked Singh to exchange them for different bills, in case the bills were "marked." Singh advised Mangano that, in order to minimize his (Mangano's) exposure, they should make sure not to tell anyone else about this transaction. Later that day, Singh went to his restaurant, HR Singleton's, and exchanged the $3,600 for different bills, which he thereafter gave to Mangano.

## ARGUMENT

Defendant Mangano bases his motion to preclude solely on the grounds that, according to him, the Court improperly found that "the government had sufficiently alleged facts from which a jury could infer a *quid pro quo* relationship between Mangano and Gulino." Def. Ltr. at 1. The defendant argues that at the March 8, 2018 conference, the government intentionally and artfully hid the fact that the "call to the County Executive's Office" at issue during oral argument was actually "a call to Rob Walker, not Ed Mangano." Id. at 2. However, try as they might, for the third time, the defense still cannot shift the narrative away from the proper focus; the defendant's actions in taking the Gulino bribe and then asking Singh to launder the bribe proceeds, are all direct evidence of the charged crimes, direct evidence of Mangano's intent and direct evidence of the close conspiratorial relationship between Mangano and Singh.

First, a review of the Court's Order of March 12, 2018 makes it clear that the Court granted the government's motion to introduce the Gulino evidence on multiple grounds, which remain ignored by the defense.

> Defendant Edward Mangano ("Mangano") has asked the Court to exclude the testimony of Gulino based on the Court's March 8, 2018 ruling. That request is denied. Although the Court stressed how the money laundering and Gulino payment constituted direct evidence, the Court also concluded that this incident was relevant to Mangano's intent under 404(b). Because Gulino's payment to Mangano is relevant to Mangano's intent for the various bribery counts, Gulino's testimony will be permitted. Mangano's acceptance of Gulino's payment and subsequent actions are circumstantial evidence that Mangano intended to accept the payment in exchange for taking official action and is, thus, relevant to show that Mangano had an unlawful intent in accepting the benefits from Singh at issue here. Gulino's testimony is particularly probative in light of Mangano's

3

argument that he only accepted the benefits at issue from Singh as part of their friendship and not as part of a *quid pro quo* for official action. (ECF # 203).

Second, the laundering of the Gulino bribe money by Singh is direct evidence of the *quid pro quo* relationship between Singh and Mangano. It is one of the benefits Singh provided to Mangano. Furthermore, Mangano's willingness to involve Singh in unrelated illegal conduct with Gulino is evidence of Mangano's understanding that his relationship with Singh is likewise illegal.

Third, the Gulino evidence proves Mangano's intent (and lack of accident or mistake) to accept bribes. Mangano's intent is obvious, he did not return the money or ask what it was for, and then he directed the laundering of the cash almost immediately, as he feared the bills were marked. All of this is direct evidence of his intent in accepting the Singh bribes at issue in this trial.

Fourth, notwithstanding the defense's argument, there is sufficient evidence set forth above to prove the *quid pro quo* relationship between Mangano and Gulino beginning in 2010 and extending well-through 2014. Mangano utterly ignores the fact that Gulino will testify he knew defendant Mangano before Mangano became the Nassau County Executive in 2010. Moreover, in 2009, Gulino was approached by Walker, who asked Gulino to help get Mangano elected. Thereafter, Gulino, either personally, or through friends, raised approximately $25,000 for Mangano's County Executive campaign. Gulino supported Mangano because Mangano would be generating more work projects on which Gulino's company, Laser, could bid. Finally, Gulino was able to inform everyone that he knew both Mangano and Walker on a personal level and that he socialized with both of them.

Also ignored by the defense is that in March 2011, after Mangano was elected, Laser won a bid for a Nassau County requirements contract that called for general reconstruction of various sites in the County for which Laser was paid in excess of $15,000,000 over three years.

Then, in late Summer/Fall 2012, Gulino fixed Mangano's fence for free, accepted a check from Mangano in the full amount of the work, but paid Mangano an equal amount in cash, essentially completing the work for free, while creating a paper trail that established otherwise. This conduct could reasonably be viewed as a thank-you for the 2011 requirements contract or a bribe for work going forward or as Gulino described it; to get access to Mangano, if, and when, the need arose, and to enhance his reputation in the County through his "relationship" with the County Executive. The fact that Gulino did not get the 2014 renewal contract after the fact is not dispositive on these issues, or of the intent if the parties at the time the bribe was paid.

Finally, for *pro quo* purposes, the government suggests, and a jury can infer, that a call to Walker, Mangano's #2, is a call to Mangano, as both were being bribed by Gulino. Arguably, they were all in a conspiracy to accept bribes in exchange for government action.

In fact, the birthday party for Walker, cited by the defense as evidence of Gulino's close relationship with Walker, also included attendance by Mangano. Finally, Gulino will stress that he had personal relationships with both Mangano and Walker, socialized with <u>both</u> of them, and gave cash to both of them.

## CONCLUSION

In sum, the defendant's motion to preclude the Gulino evidence should be denied as there are multiple and appropriate grounds for its admissibility.

Respectfully submitted,

RICHARD P. DONOGHUE
United States Attorney

By:     /s/
Lara Treinis Gatz
Catherine M. Mirabile
Raymond A. Tierney
Assistant U.S. Attorneys

cc:    Counsel for all Defendants (via ECF)