

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

CCC:CMM/LTG/RAT            *610 Federal Plaza*
F. #2015R02148                 *Central Islip, New York 11722*

May 11, 2018

<u>By ECF and Email</u>

The Honorable Joan M. Azrack
United States District Judge
United States District Court
Eastern District of New York
924 Federal Plaza
Central Islip, New York 11722

          Re:     United States v. Edward Mangano, et al.
                <u>Criminal Docket No. 16-540 (S-1) (JMA)</u>

Dear Judge Azrack:

        The government respectfully submits this letter in opposition to Defendant Venditto's motion for a mistrial and to address the objections raised by defense counsel in their letter brief to certain questions the government has asked witnesses to establish the materiality of Defendant Venditto's mispresentations and omissions to auditors, financial advisors and investors in Town of Oyster Bay ("TOB")'s securities offerings from 2010 through 2016.

        The government's use of hypothetical questions to probe materiality is legally proper.  Contrary to Defendant Venditto's assertions, courts have ruled that "such hypothetical questions are 'plainly relevant and probative' when they concern 'the materiality of Defendant's actions' in the context of a securities fraud prosecution."  <u>United States v. Hatfield</u>, No. 06-CR-0550 (JS), 2010 WL 2541057, at *2 (E.D.N.Y. June 10, 2010) (citations omitted).  The Court should thus not disturb its repeated overruling of the defendant's objections to these questions.

<u>BACKGROUND</u>

        As the Court is aware, an essential allegation in Counts Fourteen through Thirty-Four of the Superseding Indictment is that Defendant Venditto made material misrepresentations and omissions in the TOB's securities offerings in order to fraudulently induce investors to invest in the TOB's securities offerings.  Specifically, "[a]s part of the scheme, Venditto and others concealed the fact and nature of the TOB's indirect loan guarantees to [Harendra Singh's] business entities [ ], and the loan guarantees' associated risks and liabilities, from investors, prospective investors, rating agencies, insurance companies,

auditors and municipal advisors in the TOB's Securities Offerings, as well as personnel inside and outside the TOB who assisted in preparing the TOB's Securities Offerings and TOB Financial Statements.  See Superseding Indictment at ¶ 24.  The Superseding Indictment further states that "[i]n doing so, Venditto caused false and misleading statements and omissions to be made that presented investors, prospective investors, rating agencies, insurance companies, auditors and municipal advisors with a false picture of the TOB's financial condition ***and the quality and integrity of its management.***"  Id. (emphasis added). Thus, the government put Defendant Venditto on notice that qualitative materiality included the quality and integrity of TOB's management, for which Venditto was, at all relevant times, the Chief Fiscal Officer.

Thus far at trial, auditors, fiscal advisors, rating agencies and investor witnesses have testified extensively regarding representations made by Defendant Venditto and in the TOB's financial statements and securities offerings, which were certified by Defendant Venditto as not containing any material misstatement or omission, that were important to their investing decisions.[1]

The government elicited some of its testimony as to materiality through limited hypothetical questions.  The government has not asked witnesses to assume facts not in evidence before answering.  Rather, the government has proposed a fact contrary to the defendant's representations, and then elicited an auditor's/advisors/rating analyst/investors's reaction to that fact.  The Court has, for the most part, overruled objections to such questions.

For the reasons set forth below, the Court should deny Defendant's motion for a mistrial and any request to strike these questions from the record.

---

[1]      In In re Monster Worldwide, Inc. Sec. Litig., the Court noted that a defendant's certification of the false statements in the case could "be seen as 'impugn[ing] the integrity of management,' which itself would be material to investors."  251 F.R.D. 132 (S.D.N.Y. 2008). Similarly, in United States v. Ferguson, No. 06-CR-137, 2008 WL 474273 (D. Conn. Jan. 29, 2008), the Court held that "so long as the underlying alleged misrepresentation is not immaterial as a matter of law, management's involvement with the alleged misrepresentation may be considered by the jury in assessing the materiality of the representation to investors."

<u>ARGUMENT</u>

COURTS HAVE UPHELD THE USE OF HYPOTTEHTICAL QUESTIONS TO
<u>ESTABLISH MATERIALITY IN FRAUD TRIALS</u>

Courts have ruled repeatedly that, in fraud cases, hypothetical questions that assume some fact contrary to the defendant's representations and then elicit the witness' reaction to that fact are proper.

In <u>Hatfield</u>—a securities fraud prosecution—the government called investors as fact witnesses on materiality.  2010 WL 2541057 at *1.  The government asked these investors "several questions that, by their phrasing, presumed as true certain disputed factual allegations."  <u>Id</u>.  The court specifically approved questions asserting that a fact is true (a fact contrary to the defendant's representations) and then asking whether that disputed fact would have been significant to the investor.  <u>Id</u>.  The defendant filed a motion for a mistrial, which the court denied.  The court noted that "'there appears to be no support for the proposition that the government cannot ask its own fact witnesses otherwise relevant questions that may have a guilt assuming element.'"  <u>Id</u>. at 2 (citing <u>United States v. Laurienti</u>, 2010 WL 2266986 (9th Cir. June 16, 2010); <u>United States v. Jennings</u>, 487 F.3d 564, 582 (8th Cir. 2007) (hypothetical questions concerning materiality are appropriate because "[t]he government would be hard pressed to prove this element without asking whether the undisclosed information would have affected the decision maker's analysis"); <u>United States v. Ranney</u>, 719 F.2d 1183, 1189 (1st Cir. 1983) (holding that the district court  was "eminently correct" in admitting hypothetical questions concerning materiality).[2]  As <u>Hatfield</u> elaborated, the government's hypothetical questions did not assume the defendant's guilt.  Rather, the questions "merely presumed certain disputed facts concerning [the defendant's company's] public statements."  <u>Hatfield</u>, 2010 WL 2541057 at *2 (citing <u>United States v. Dukes</u>, 242 F. App'x 37, 45 (4th Cir. 2007) (holding that materiality-related hypothetical questions were appropriate and "did not assume [the defendant's] guilt of the charged crimes.  Instead, [they] focused on the materiality of the [defendant's] representations").

In a related context, the Second Circuit has similarly upheld the use of "what-if-you-had-known" questions.  In <u>United States v. Cuti</u>, a fraud case, the government called a company's external auditor to testify as to "how they had accounted for the proceeds from fraudulent transactions, how they would have accounted for the transactions had they been aware of the full facts, and how the material information that was withheld from them led to misstatements in the company's financial statements."  720 F.3d 453, 456 (2d Cir. 2013).  The

---

[2]     The version of the <u>Laurienti</u> opinion cited by the <u>Hatfield</u> court was subsequently withdrawn and superseded by the Ninth Circuit.  However, the substituted version of the <u>Laurienti</u> opinion contains the identical language cited in <u>Hatfield</u>: "there appears to be no support for the proposition that the government cannot ask its own fact witnesses otherwise relevant questions that may have a guilt-assuming element."  <u>See</u> <u>United States v. Laurienti</u>, 611 F.3d 530, 549 (9th Cir. 2010).

defendant challenged the "what-if-you-had-known" questions posed to the auditor as eliciting testimony beyond the personal knowledge of the witness.  Id. at 457-58.  The Second Circuit denied the challenge, noting that "a witness may testify to the fact of what he did not know and how, if he had known that independently established fact, it would have affected his conduct or behavior."  Id. at 459.  The court continued, "'what-if-you-had-known' questions that present withheld facts to a witness are especially useful to elicit testimony about the impact of fraud."  Id.[3]  Further, "there was nothing in the prosecution's questions or in the answers they elicited that prevented the defense from challenging the factual accuracy of the disputed testimony."  Id.  The court went on find that the use of hypothetical questions in fraud trials met the foundational requirements of Federal Rule of Evidence 602 and, alternatively, were proper under the lay opinion rule embodied in Federal Rule of Evidence 701.  Id.  at 459-60.[4]

Courts in this Circuit have routinely permitted the government to ask questions, similar to those posed by the government in this case (and upon which defendant objects) in order to establish materiality.  For example, in United States v. DiScala, 14-CR-399 (ENV),[5] the Court specifically permitted the line of questioning involving hypotheticals in order to establish the effect of certain information on the witness.  See DiScala Transcript attached

---

[3]     Cuti further noted that the Second Circuit has not addressed the use of hypothetical questions to establish materiality squarely, but cited decisions from the First, Sixth, Seventh, Eighth, Ninth and Tenth Circuits permitting "the use of hypothetical questions to inquire into the effect of a fraud."  720 F.3d at 459 (citing United States v. Orr, 692 F.3d 1079, 1096-97 (10th Cir. 2012); Laurienti, 611 F.3d 530, 549 (9th Cir. 2010); United States v. Jennings, 487 F.3d 564, 582 (8th Cir. 2007); Ranney, 719 F.2d 1183, 1187-88 (1st Cir. 1983); United States v. Bush, 522 F.2d 641, 649-50 (7th Cir. 1975)).  Significantly, the Second Circuit in Cuti expressed no disagreement with this overwhelming weight of circuit court authority supporting the use of hypothetical questions in fraud cases to prove materiality.  See also United States v. Swenson, 2014 WL 354702, at *1-2 (D. Idaho Jan. 31 2014) (approving, in a fraud trial, questions designed to elicit "whether the testifying witness would have made the same investment decisions had the testifying witness known the truth about [a company's] financial condition" and noting that "'what-if-you-had-known' testimony . . . has been recognized as a useful tool for eliciting testimony on fraud issues and . . . is admissible as either fact or opinion testimony").

[4]     The Cuti court further held that "narrow questions asked on direct examination designed to assess the impact of the fraudulent omissions" on the auditor's accounting treatment did not undermine the presumption of innocence because the district court limited the hypotheticals to "to the impact of withheld information" and barred witnesses "from speaking to the wrongfulness of the defendants' actions, leaving that analysis to the jury."  Id. at 460-61.  In this case, the government has not asked any fact witness to opine on the guilt or innocence of the defendant.

[5]     The trial in DiScala took place in this Court in April/May 2018 before the Honorable Eric N. Vitaliano; the jury reached a verdict in that case on May 4, 2018.

hereto as Exhibit A, at 1932:12 – 1933:3 (testimony of Conti); 1965:5-23 and 1979:5-13 (testimony of Gefter); 1998:13-2000:10 (testimony of Hagan).   Indeed, Judge Vitaliano permitted the following questions:

> Q:   Did Mr. Marra ever tell you that he was getting compensated for finding investors in Cubed?
>
> A:   I never asked.
>
> Q:   Okay.  And he did not tell you?
>
> A:   No.
>
> Q:   Dr. Gefter, would it have been important for you to know that people were working together to control the stock price of Cubed?
>
> A:   Absolutely.
>
> Q:   Why?
>
> A:   Well, even though my emails describe me as a dummy, I believe I'm not that kind of a dummy.  If anybody controls the stock price, if it's not freely purchased by people, I think the market is supposed to establish the price of the stock.  If anyone is controlling, isn't that illegal?
>
> Q:   What impact would that have on your investment decision if that was happening?
>
> A:   There wouldn't be any investment.  I cannot do anything illegal.

Id. at 1965:5-23 (Gefter).  And further questions still:

> Q:   . . . In these risk factors, is there any mention of a risk that certain individuals are artificially maintaining the stock price?
>
> A:   Are you asking me?
>
> Q:   Yes.
>
> A:   Well, the two paragraphs that I have read, no?
>
> Q:   Would you have invested if anyone had told you that?
>
> A:   No, I don't want to go to jail.  I'm too pretty.  No.

> Q:     Would you have invested if anyone had told you that?
>
> A:     No, I don't want to go to jail.  I'm too pretty.  No.

Id. at 1979:5-13 (Gefter).

The Court in United States v. Shkreli, 15-CR-637 (KAM),[6] similarly, permitted hypothetical questions to establish materiality in a securities fraud case.  See Shrekli Transcript annexed hereto as Exhibit B, at 947:25 – 948:21 (testimony of Hassan); 1941:12 – 1942:24; 1943:12-19; 1944:2-18; 1945:7 – 1973:17 (testimony of Rosenwald).   In particular, Judge Matsumoto permitted the following questions:

> Q:     [S]o, taking all of these investor statements together did you believe that they were accurate?
>
> A:     Yes.
>
> Q:     And did you rely on them?
>
> A:     Yes, yes.
>
> Q:     If they were not accurate, would that have affected your decision to keep your money in MSMB Capital?
>
> A:     You mean if I knew that they were not accurate?
>
> Q:     If they were not accurate, right.
>
> A:     I certainly would have tried to find out why they weren't accurate.
>
> Q:     Okay.  And would that have affected your decision to keep the investment?
>
> A:     Sure.  It depends on the answer.

Shkreli Tr. 1973:4-17.  And further questioning:

> Q:     Okay.  Did you expect those monthly statements to be accurate?
>
> A:     Yes.

---

[6]     The trial in Shkreli took place in this Court in June/July/August 2017 before the Honorable Kiyo A. Matsumoto; the jury reached a verdict in that case on August 4, 2017.

Id. at 2015:24 – 2016:1.

      In yet another example, the Court in United States v. Lange, 10-CR-968 (DLI),[7] similarly, permitted hypothetical questions to establish materiality.  See Lange Transcript annexed hereto as Exhibit C, at 2351:2-9 and 2351:24 – 2352:11.  In particular, the following questions were posed:

> Q:    Would it have mattered to you if information about management's work experience was not accurate in the business plan?
>
> A:    Yes, it would.
>
> Q:    Why would that have mattered to you?
>
> A:    Well, obviously, they were not able to – if they were able to run previous company or companies, I would imagine it would influence this current condition.
>
> . . .
>
> Q:    Would it have been important to you in deciding whether to invest in Black Sand Mine if you knew that management deliberately left out any mention of Harbor Funding to keep investors from doing research on that company.
>
> A:    Yes.
>
> Q:    Would it have mattered to you if you had been told that Harbor Funding had closed in 2009 and owed its clients millions of dollars?
>
> A:    Yes.
>
> Q:    Why would that have mattered to you?
>
> A:    It would have been a huge red flag just from doing business previously.  That's something that would not have been desirable.

---

[7]    The trial in Lange took place in this Court in February/March 2014 before the Honorable Dora L. Irizzary; the jury reached a verdict in that case on March 3, 2014.

Lange, Tr. 2351:2-9 and 2351:24 – 2352:11.

       The hypothetical questions asked by the government in this case are squarely within the bounds of cases like Hatfield and Cuti, and the wealth of authority cited within those cases, and, as cited above, are consistent with those questions routinely permitted by courts in this circuit to establish materiality in securities fraud cases.  Indeed, the government's questions posed facts inconsistent with the defendant's representations to auditors, financial advisors, rating analysts and investors and then elicited the witnesses' reaction.  These questions are in no way prejudicial to the defendant.  Indeed, he is free to argue that the government has failed to prove the falsity of the defendant's statements or the materially misleading nature of his omissions.

CONCLUSION

       For the foregoing reasons, the Court's previous rulings allowing the use of hypothetical questions to establish materiality should not be disturbed and Defendant Venditto's motion for a mistrial should be denied.

Respectfully submitted,

RICHARD P. DONOGHUE
United States Attorney

By:       /s/
      Catherine M. Mirabile
      Lara Treinis Gatz
      Raymond A. Tierney
      Assistant U.S. Attorneys
      (631) 715-7850/7913/7849

Enclosures

cc:     Counsel for all Defendants (via ECF)