

U.S. Department of Justice

United States Attorney
Eastern District of New York

CMM/LTG/RAT
F. #2015R02148

610 Federal Plaza
Central Islip, New York 11722

May 12, 2018

By ECF and Email

The Honorable Joan M. Azrack
United States District Judge
United States District Court
Eastern District of New York
924 Federal Plaza
Central Islip, New York 11722

    Re: United States v. Edward Mangano, et al.
       Criminal Docket No. 16-540 (S-1) (JMA)

Dear Judge Azrack:

    The government respectfully submits this letter in opposition to Defendant John Venditto's request for an advice of counsel jury instruction related to (1) the legality of the amendments to the concession agreements, and (2) the securities offerings. As discussed in greater detail below, Defendant Venditto has utterly failed to establish an advice-of-counsel defense in several critical aspects. First, he is not charged with any illegal conduct in connection with the amendments to the concession agreements (the bribery charges relate only to the official acts authorizing the amendments to the concession agreements, not the amendments themselves) so the fact that he spoke to an attorney about this is irrelevant to the jury's determination. Second, Venditto has failed to proffer, much less demonstrate in connection with the securities fraud charges, that he disclosed the relevant material facts to any attorney, and he has failed to suggest in many instances that he sought attorney advice prior to taking relevant actions. Accordingly, as there are no facts in the record to support an advice-of-counsel defense, Defendant Venditto's request should be denied in its entirety.

    Further, as has been repeatedly discussed at this trial, and which the Court has repeatedly acknowledged, this trial is not about the enforceability and/or legality of the indirect loan guarantees. According, as set forth below, the government requests that the Court give the jury a limiting instruction on this issue.

## THE CHARGES

Defendant Venditto is charged with multiple criminal offenses arising from a five-year bribery scheme in which Harendra Singh provided things of value to Edward Mangano, the (now former) Nassau County Executive, and Venditto, the (now former) TOB Supervisor, in exchange for official acts, on an as-needed basis, relating to, among other things, the TOB's guarantee of certain loans that Singh received from a bank and lender in connection with Singh's status as a TOB concessionaire and Nassau County's award of certain contracts to Singh's businesses. See Sup. Indictment (Dkt. No. 92). Specifically, under this "stream of benefits" theory of official bribery, Venditto is charged with conspiracy to commit federal program bribery and honest services wire fraud, and related substantive counts, in violation of 18 U.S.C. §§ 371, 666(a)(1)(B), 1343, 1346 and 1349.

Defendant Venditto is also charged with obstruction of justice, in violation of 18 U.S.C. § 1512(c)(2), and with making false statements, in violation of 18 U.S.C. § 1001(a)(2). Id.

Finally, Defendant Venditto is also charged with 21 counts of securities fraud-related charges: one count of securities fraud, in violation of 15 U.S.C. §§ 78j(b) and 78ff; one count of conspiracy to commit wire fraud related to securities offerings, in violation of 18 U.S.C. § 1349; and nineteen substantive counts of wire fraud related to securities offerings, in violation of 18 U.S.C. § 1343 (collectively, the "Additional Securities Fraud Charges"). See Sup. Indictment (Dkt. No. 92) at ¶¶ 55-60. Specifically, the Additional Securities Fraud Charges allege that in or about and between January 2010 and December 2016, Venditto, together with others, engaged in a scheme to fraudulently induce investors to invest in the TOB securities offerings. Id. at ¶¶ 24-27. That is, that Venditto made material misrepresentations and omissions in the TOB's securities offerings in order to fraudulently induce investors to invest in the TOB's securities offerings. Specifically, "[a]s part of the scheme, Venditto and others concealed the fact and nature of the TOB's indirect loan guarantees to [Harendra Singh's] business entities [ ], and the loan guarantees' associated risks and liabilities, from investors, prospective investors, rating agencies, insurance companies, auditors and municipal advisors in the TOB's Securities Offerings, as well as personnel inside and outside the TOB who assisted in preparing the TOB's Securities Offerings and TOB Financial Statements. See Sup. Indictment at ¶ 24. The Superseding Indictment further states that "[i]n doing so, Venditto caused false and misleading statements and omissions to be made that presented investors, prospective investors, rating agencies, insurance companies, auditors and municipal advisors with a false picture of the TOB's financial condition and the quality and integrity of its management." Id.

ARGUMENT

A.     THE ADVICE OF COUNSEL DEFENSE

The defense of advice of counsel is a more specific form of the defense of good faith, available in limited circumstances in which a good faith instruction may otherwise be applicable. See Sand, Modern Federal Jury Instructions, Instruction 8-04. Specifically, advice of counsel is a form of good faith offered to negate the specific intent required to convict for certain offenses. United States v. Traitz, 871 F.2d 368, 382 n.9 (3d Cir. 1989). The theory behind the defense is that a person who discloses all material facts about a proposed course of action and then follows the resulting legal advice *may* lack the intent required to convict for certain offenses. See United States v. Thaggard, 477 F.2d 626, 632 (5th Cir. 1973). But the strength of the good-faith inference flowing from any legal advice depends on (1) what the defendant disclosed to the lawyer about the transaction, and (2) the connection between the resulting advice and some disputed issue at trial. See United States v. Cotton, 535 U.S. 625, 631-32 (2002).

In order to establish a colorable advice-of-counsel defense, and thus be entitled to a jury instruction with respect to those offenses to which it may apply, the defendant must establish sufficient evidence that: (1) before taking action in connection with the charged conduct, he "honestly and in good faith [sought] the advice of a lawyer as to what he may lawfully do"; (2) he "fully and honestly [laid] all the facts before his counsel"; and (3) he acted strictly in accordance with the advice of his counsel. United States v. Evangelista, 122 F.3d 112, 117 (2d Cir. 1997) (internal quotation marks omitted); see also United States v. Colasuonno, 697 F.3d 164, 181 (2d Cir. 2012). Where a defendant fails to meet even one of these requirements, he is not entitled to a jury instruction regarding advice of counsel. See Evangelista, 122 F.3d at 117 (affirming denial of instruction, as defendants did not satisfy the third prong of the test); Colasuonno, 697 F.3d at 181 (affirming denial of instruction, as defendant did not satisfy the second prong of the test); United States v. Quinones, 417 F. App'x 65, 67 (2d Cir. 2011) (affirming denial of instruction and order precluding defense from arguing advice of counsel in summation; "defendants are not entitled to such an instruction unless there are sufficient facts in the record to support the defense," and "the defendants [in this case] have not shown the required factual predicate for an advice-of-counsel defense"). However, "no [defendant] can willfully and knowingly violate the law and excuse himself from the consequences thereof by pleading that he followed the advice of counsel." United States v. Beech-Nut Corp., 871 F.2d 1181, 1195 (2d Cir. 1989) (quoting Williamson v. United States, 207 U.S. 425, 453 (1908)).

The Second Circuit's decision in United States v. Scully, 877 F.3d 464, 476-77 (2017), does not overturn this long-standing principle. In Scully, the Second Circuit noted that an advice-of-counsel defense is not an affirmative defense and that the burden, as it relates to intent, remains at all time on the government. Id. at 476. While it may be "potentially confusing to instruct the jury that the defendant 'has the burden of producing evidence to support [an advice-of-counsel] defense,'" id. at 477, a defendant is entitled to such an

3

instruction "only if there are sufficient facts in the record to support the defense." Id. at 476 (citing Evangelista, 122 F.3d at 117).

Thus, the advice-of-counsel defense applies only if a client discloses all material facts, seeks legal advice before taking the proposed action, and relies on that advice in good faith. See Evangelista, 122 F.3d at 117; see also Traitz, 871 F.2d at 382 (referring to "a possible course of action"); United States v. Conner, 752 F.2d 566, 574 (11th Cir. 1985) (advice must address "the lawfulness of future conduct").

    B.    THERE ARE INSUFFICIENT FACTS IN THE RECORD TO SUPPORT AN ADVICE-OF-COUNSEL DEFENSE

As the Court is aware, the government has, repeatedly, sought notice from Defendant Venditto of his intention of pursing an advice-of-counsel defense and the precise subject matter about which he will assert that defense, including the identity(ies) of the attorneys upon which he relied. See, e.g., Government's Motion *in Limine*, dated February 6, 2018 at pp. 12-13; Government's Letter Brief, dated February 27, 2018 at pp. 5-11. The defendant's May 11, 2018 request for an advice-of-counsel jury instruction does little to inform the Court or the government as to scope and nature of this alleged advice-of-counsel defense.

Defendant's application appears to indicate that he is seeking an advice-of-counsel instruction with respect to (1) the legality of the amendments to the concession agreements, and (2) the securities offerings. See Defendant Venditto's May 11, 2018 Letter ("Venditto Ltr."). Defendant Venditto fails, however, to identify which counsel's advice he actually relied upon let alone whether he "fully and honestly [laid] all the facts before his counsel," and acted strictly in accordance with the advice of his counsel.

    1.    The Charges Related to the TOB Loan Scheme

As an initial matter, Venditto seems to be conflating the legality of the amendments to the concession agreements (which is not an issue for the jury to decide at this federal criminal trial) with the why – i.e., the "stream of benefits" bribery scheme – he assisted Singh in obtaining financing at all (which is the issue for the jury to decide in this case). As has been repeatedly discussed at this trial, and which the Court has repeatedly acknowledged, this trial is not about the enforceability and/or legality of the indirect loan guarantees. Rather, it is the efforts Mangano and Venditto each exerted in order to ensure that Singh's loans were guaranteed by the TOB (indirectly or otherwise) that is highly relevant to the charges in the superseding indictment. An advice-of-counsel defense has to be, at the very least, a defense to the crimes charged. Any alleged advice as to the legality of the amendments to the concession agreements in and of themselves is irrelevant.

If the jury does not believe, beyond a reasonable doubt, the government's version of events, i.e. that the amendments to the concession agreements were the result of "stream of benefits" bribery scheme entered into with Venditto's knowledge, then the jury

4

would have to acquit Venditto, with or without any instruction or consideration of an advice-of-counsel defense. The jury simply could not convict unless the jurors find that Defendant Venditto either (1) "solicited, demanded, accepted or agreed to accept something of value from another person," and "acted corruptly with the intent to be influenced or rewarded" (federal program bribery), and/or (2) "knowingly and willfully participated in a scheme to defraud" involving the receipt of bribes (honest services fraud). Venditto's defense denying any receipt of bribes renders an advice-of-counsel defense superfluous and irrelevant.

Even if such a defense were not irrelevant, the evidence in the record does not support an advice-of-counsel jury instruction regarding the legality of the amendments to the concession agreements. First, it is unclear from Defendant Venditto's application as to whose advice he is allegedly relying on, let alone whether (1) he "honestly and in good faith [sought] the advice of a lawyer as to what he may lawfully do"; (2) he "fully and honestly [laid] all the facts before his counsel"; and (3) he acted strictly in accordance with the advice of his counsel. Evangelista, 122 F.3d at 117.

With respect to Jonathan Sinnreich, Defendant Venditto appears to assert that he is entitled to an advice-of-counsel defense because Sinnreich was merely invited to the April 28, 2010 meeting and "was told by Mr. Venditto to speak first and to lay out for the other lawyers in the room the nature of his concern." See Venditto Ltr. at 2. Further, Defendant Venditto's claims that Sinnreich's "legal concerns . . . diminished over time" wholly misrepresents the evidence in this case. See e.g. Tr. 4509-4514 and GX 817 (March 23, 2010 Email) (Sinnreich testified that he urged Venditto and Genova "in the strongest terms to reconsider [assisting Singh in obtaining financing]); Tr. 4536-4542 (Sinnreich "voiced all of [his] concerns" at the April 28, 2010 meeting" and was not tasked with finding a solution to the concerns); Tr. 4464 and GX 1165 (May 13, 2010 email) (Sinnreich testified that Cornachio's apparent "solution" "won't withstand judicial scrutiny"). At no point did Jonathan Sinnreich advise Defendant Venditto – or anyone else – that the proposed amendments to the concession agreements were lawful. Accordingly, at the very least, Defendant Venditto cannot establish that he acted strictly in accordance with Sinnreich's advice.

With respect to William Cornachio,[1] Defendant Venditto appears to assert that he is entitled to an advice-of-counsel defense because Cornachio attended the April 28, 2010 meeting and that, following the meeting, "Cornachio had an idea of how to solve the legal dilemma," which was documented in an April 29, 2010 email. See Venditto Ltr. at 2 and GX 830 (April 29, 2010 email). The evidence of record establishes that, as of the April 28, 2010

---

[1] Defendant Venditto does not appear to indicate any reliance on advice from William Savino, Esq., who was also present at the April 28, 2010 meeting. Such reliance would be unavailing, as Savino testified that this transaction was not within his area of expertise and, thus, he would be unable to provide competent advice for Venditto to rely upon. See Tr. 3421 (Savino asked Cornachio to work on the project because it was not within Savino's area of practice).

meeting where Venditto was actually present, there was no "solution" to the issue of the TOB assisting Singh in obtaining financing. See Tr. 3544 (no solution at the time of the April 28, 2010 meeting). Thereafter, Cornachio comes up with a purported "solution," which is memorialized in an email (GX 830),[2] to which Sinnreich states will not "withstand judicial scrutiny." Tr. 4464 – and GX 1165. There is no evidence in the record that Venditto discussed Cornachio's solution or Sinnreich's concerns with anyone, let alone in "good faith" relied on such advice.

For all these reasons, Defendant Venditto's request for an advice-of-counsel jury instruction related to the "legality" of the amendments to the concession agreements should be denied.

### 2. The Charges Related to Securities Fraud

Defendant Venditto also seeks an advice-of-counsel jury instruction related to the securities fraud charges. In support of his application for an advice-of-counsel jury instruction related to the securities fraud charges, Venditto appears to rely on advice allegedly obtained from the law firms of Paul Weiss Rifkind Wharton & Garrison LLP ("Paul Weiss") and Quinn Emanuel Urquhart & Sullivan LLP ("Quinn Emanuel") and, in particular, Jonathan Pickhardt, Esq. See Venditto Ltr. at 2-6.

Aside from the fact that Defendant Venditto selectively cites to the trial transcript and wholly ignores testimony that directly undermines his application, Venditto has failed to proffer, much less demonstrate, that he disclosed the relevant material facts to any attorney, and he has failed to suggest in many instances that he sought attorney advice prior to taking relevant actions. Accordingly, his request for an advice-of-counsel jury instruction related to the securities fraud charges should, likewise, be denied.

As an initial matter, both Paul Weiss and Quinn Emanuel were not hired by the TOB until, at the earliest, February 2015. See Tr. 5830-5833 (Genova testified that the TOB hired both firms in early 2015). Counts Fourteen through Twenty-Eight pertain to securities offerings that pre-date any legal representation of the TOB by Paul Weiss or Quinn Emanuel and there is no evidence in the record that Venditto relied on advice from Paul Weiss or Quinn Emanuel regarding these securities offerings. Accordingly, Defendant Venditto is wholly unable to establish any cognizable advice-of-counsel defense with respect to these 15 counts.

With respect to the remaining six counts (Counts Twenty-Nine through Thirty-Four), there is no evidence in the record whatsoever that Paul Weiss consulted on, let alone provided advice about, disclosure obligations related to these securities offerings. Thus,

---

[2] Notably, this email is not authored by Cornachio and Cornachio is not a recipient on this email.

Defendant Venditto's mere reference to Paul Weiss being a highly-regarded law firm (see Venditto Ltr. at 2) is, in and of itself, meaningless.

With respect to Quinn Emanuel, the record is clear that the TOB hired Quinn Emanuel – and, more specifically, Pickhardt, who is a partner at Quinn Emanuel – in anticipation of civil lawsuits and not with respect to disclosure obligations in securities offerings.[3] See Tr. 5833 (Genova testified that the TOB hired Quinn Emanuel "in anticipation of civil lawsuits); see also Tr. 5888-89 (same); Tr. 6218 (same).  Moreover, the evidence of record indicates that Venditto and Genova did not disclose all material facts to counsel, thus utterly undermining any potential advice-of-counsel defense.  Indeed, Genova testified as that he and John Venditto were not honest in their communications with attorneys from either Paul Weiss or Quinn Emanuel and that "left out a significant, a very, very significant part of the story."  See, e.g., Tr. 5833-5849; Tr. 5893-94 (Venditto and Genova did not provide Quinn Emanuel with accurate information when firm was drafting litigation disclosure; indeed "most of the story was never included and was never given to Quinn Emanuel"); Tr. 6166-67 ("there was an effort by Supervisor Venditto and [Genova] not to be forthright with Quinn Emanuel, Paul Weiss or the controller's office . . . ."); Tr. 6221-24 (failed to provide truthful and complete information to Quinn Emanuel); Tr. 6273-6275 (same).

Counsel's advice is only as good as the information upon which it is based.  There is no evidence in the record that Venditto "fully and honestly [laid] all the facts before his counsel" and, consequently, that any advice from Pickhardt is competent.  Accordingly, the evidence of record does not support an advice-of-counsel defense related to Counts Twenty-Nine through Thirty-Four.

---

[3] In fact, the record is clear that, at all relevant times, TOB had bond counsel (Randolph Mayer) and that Mayer was unaware of all four of the indirect loan guarantees until approximately August 25, 2015 at the earliest.  See Tr. 7223 (Crowley testified that she remembered feeling like this was the first everyone, including Mayer, had heard of the concession agreements).

    C.    THE GOVERNMENT'S PROPOSED LIMITING INSTRUCTION

Given defendants' questioning of witnesses throughout this trial, combined with Defendant Venditto's current request for an advice-of-counsel instruction, the government respectfully requests that the Court give the jury a limiting instruction on the fact that this trial is not about the enforceability and/or legality of the indirect loan guarantees. Accordingly, the government proposes the following instruction:

> Ladies and Gentlemen, you have heard a great deal of testimony about various amendments to Town of Oyster Bay concession agreements. I instruct you that the legality or constitutionality of the amendments to the concession agreements is not an issue of fact for you to determine at this trial. Each side may make arguments about the character or meaning of the amendments to the concession agreements to support their position, but again you are not tasked with the responsibility of determining their legality or constitutionality.

## CONCLUSION

For the foregoing reasons, Defendant Venditto's request for an advice-of-counsel jury instruction should be denied in its entirety, and the government's request for a limiting instruction regarding the jury's consideration of the legality and/or constitutionality of the amendments to the concession agreements should be granted.

Respectfully submitted,

RICHARD P. DONOGHUE
United States Attorney

By:    /s/
Catherine M. Mirabile
Lara Treinis Gatz
Raymond A. Tierney
Assistant U.S. Attorneys
(631) 715-7850/7913/7849

cc:    Counsel for all Defendants (via ECF)