

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

F. #2015R02148
DCL:MMO

*610 Federal Plaza*
*Central Islip, New York 11722*

April 4, 2019

<u>By Hand and ECF</u>

Honorable Joan M. Azrack
United Stated District Judge
Eastern District of New York
100 Federal Plaza
Central Islip, New York 11722

    Re: <u>United States v. Edward Mangano and Linda Mangano</u>
       <u>Criminal Docket No. 16-CR-540 (S-2) (JMA)</u>

Dear Judge Azrack:

  The United States respectfully submits this letter to seek the forfeiture of one Black and Silver Panerai Brand Luminor 44mm watch, serial number BB1507263 (the "Watch"), in addition to the entry of a forfeiture money judgment in the amount of Five Hundred Twenty-Six Thousand, Six Hundred Six Dollars and Ninety-Five Cents ($526,606.95) (the "forfeiture money judgment"), against defendant Edward Mangano (the "defendant"), based on his convictions of Counts One through Four (Conspiracy to Commit Federal Program Bribery, Federal Program Bribery, Conspiracy to Commit Honest Services Wire Fraud, and Honest Services Wire Fraud) of the Superseding Indictment. <u>See</u> Verdict Sheet, Dkt. # 402.

I. <u>Applicable Forfeiture Laws</u>

  A. <u>The Criminal Forfeiture Rules and Statutes</u>

  Rule 32.2 of the Federal Rules of Criminal Procedure governs the criminal forfeiture sought by the government in this case. <u>See</u> <u>United States v. Capoccia</u>, 503 F.3d 103, 109 (2d Cir. 2007). Rule 32.2(b)(1)(A) provides, in pertinent part:

> As soon as practical after a verdict . . . of guilty . . . on any count in an indictment . . . regarding which criminal forfeiture is sought, the court must determine what property is subject to forfeiture under the applicable statute. If the government seeks forfeiture of specific property, the court must determine whether the

> government has established the requisite nexus between the property and the offense. If the government seeks a personal money judgment, the court must determine the amount of money that the defendant will be ordered to pay.

Fed. R. Crim. P. 32.2(b)(1)(A). Further, Rule 32.2(b)(1)(B) provides, in pertinent part:

> The court's determination may be based on evidence already in the record, . . . and on any additional evidence or information submitted by the parties and accepted by the court as relevant and reliable.

See Capoccia, 503 F.3d at 109; United States v. Roberts, 660 F.3d 149, 166 (2d Cir. 2011) (stating that "district courts may 'use general points of reference as a starting point' for a forfeiture calculation and 'make reasonable extrapolations' supported by a preponderance of the evidence." (citation omitted)).

The Supreme Court has recognized that criminal forfeiture is part of a defendant's sentence, and is mandatory when the defendant has been convicted of an offense giving rise to forfeiture. See United States v. Monsanto, 491 U.S. 600, 607 (1989) (stating that "Congress could not have chosen stronger words to express its intent that forfeiture be mandatory in cases where the statute applied . . . ."); United States v. McGinty, 610 F.3d 1242, 1246 (10th Cir. 2010) (stating that the language in the forfeiture statutes "express[es] Congress's intent that criminal forfeiture is both mandatory and broad"). Moreover, the Court may impose both forfeiture and restitution in a criminal case because "the forfeiture and restitution statutes serve different purposes." United States v. Torres, 703 F.3d 194, 203 (2d Cir. 2012). Whereas restitution is intended to compensate victims for the losses caused by the defendant's criminal conduct, forfeiture is intended to interfere with the criminal activity and impose an economic sanction upon the defendant by depriving him of the proceeds and instrumentalities of the crime. Id.

Here, the government seeks forfeiture under 18 U.S.C. § 981(a)(1)(C), 21 U.S.C. § 853(p), and 28 U.S.C. § 2461(c), based on defendant's convictions for conspiracy to commit federal program bribery, federal program bribery, conspiracy to commit honest services wire fraud, and honest services wire fraud. See Superseding Indictment, Dkt. # 309 at pp. 16-17.

      B.      <u>Criminal Forfeiture Based on Defendant's Convictions</u>

28 U.S.C. § 2461(c) provides, in pertinent part:

> If a person is charged in a criminal case with a violation of an Act of Congress for which the civil or criminal forfeiture of property is authorized, the Government may include notice of the forfeiture in the indictment or information pursuant to the Federal Rules of

>Criminal Procedure.  If the defendant is convicted of the offense giving rise to the forfeiture, the court shall order the forfeiture of the property as part of the sentence in the criminal case pursuant to the Federal Rules of Criminal Procedure and section 3554 of title 18, United States Code.

18 U.S.C. § 981(a)(1)(C) specifically provides for the forfeiture of "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to . . . any offense constituting 'specified unlawful activity' (as defined in section 1956(c)(7) of this title), or a conspiracy to commit such offense."  Conspiracy to Commit Federal Program Bribery (Count One), Federal Program Bribery (Count Two), Conspiracy to Commit Honest Services Wire Fraud (Count Three), and Honest Services Wire Fraud (Count Four) are specified unlawful activities as defined in 18 U.S.C. § 1956(c)(7)(A) and (D).  See 18 U.S.C. § 1956(c)(7)(D) ("relating to theft or bribery concerning programs receiving Federal funds"); 18 U.S.C. § 1961(1)(B) ("relating to wire fraud").  "Proceeds are property that a person would not have but for the criminal offense."  United States v. Nicolo, 597 F. Supp. 2d 342, 346 (W.D.N.Y. 2009) (citation and internal quotation marks omitted).

  C.  The Burden of Proof

The government bears the burden of establishing the amount of money subject to forfeiture only by a preponderance of the evidence.  See Capoccia, 503 F.3d at 116 ("Sentencing courts determine forfeiture amounts by a preponderance of the evidence."); United States v. Bellomo, 176 F.3d 580, 595 (2d Cir. 1999) (upholding trial court's application of preponderance standard on grounds that criminal forfeiture is part of sentencing).  Further, the government is not required to provide a precise calculation of the amount of money a defendant must forfeit.  United States v. Treacy, 639 F.3d 32, 48 (2d Cir. 2011).  Instead, the money judgment amount can be reasonably estimated based upon the available information.  Id.  Sentencing courts may consider trial evidence, hearsay, as well as "evidence or information submitted by the parties and accepted by the court as relevant and reliable," in determining forfeiture.  Fed. R. Crim. P. 32.2(b)(1)(B); Capoccia, 503 F.3d at 109-10 (citing United States v. Gaskin, 364 F.3d 438, 462-63 (2d Cir. 2004)).

II.  The Relevant Evidence at Trial

The evidence at trial established that between January 2010 and February 2015, the defendant engaged in schemes to solicit and receive bribes and kickbacks from restaurateur Harendra Singh ("Singh").  In return for the cash and personal benefits he received, the defendant, who served as Nassau County Executive from January 2010 to December 2017, performed official actions to benefit Singh in connection with his businesses.  See, e.g., Transcript of Criminal Trial ("Trial Tr.") for 1/31/19 at pp. 1428-29 (Singh testified that in exchange for bribes, defendant did favors for, and performed official actions to benefit, Singh).

Several weeks after the defendant took office as Nassau County Executive in January 2010, he urged the Town of Oyster Bay ("TOB") Supervisor to help Singh obtain financing in order to make required capital improvements at TOBAY Beach and the Woodlands, a restaurant located at the TOB golf course, by authorizing the TOB to indirectly guarantee four bank loans for Singh totaling approximately $20 million. See, e.g., Trial Tr. for 1/31/19 at p. 1433. The defendant used his official position to ensure that the TOB backed the loans. In April 2010, Singh hired the defendant's wife, defendant Linda Mangano ("defendant Linda Mangano"), for a sham job for which she was paid more than $100,000 per year. See, e.g., Trial Tr. for 1/31/19 at pp. 1429, 1431-32. On June 8, 2010, the TOB board voted to authorize the town to back Singh's personal loans for the beach and the golf course. Singh also paid for five vacations, hardwood flooring, a custom-made office chair, a massage chair and the Watch for the defendant, as well as paid over $450,000 in total to defendant Linda Mangano for the no-show job. See id. at pp. 1428-30 (Singh testified that he bribed defendant by giving defendant's wife, defendant Linda Mangano, a no-show job, buying vacations for defendant's family, buying defendant a massage chair and office chair, buying flooring for defendant's bedroom, buying a watch for defendant's son, and providing defendant with free meals).

As a result of the foregoing, the defendant was found guilty of, *inter alia*, conspiracy to commit federal program bribery, federal program bribery, conspiracy to commit honest services wire fraud, and honest services wire fraud.

III. Forfeiture of the Watch and a Forfeiture Money Judgment in the Amount of $526,606.95 are Warranted

In this case, the trial evidence, including the testimony of witnesses and law enforcement agents, demonstrates that forfeiture of the Watch, in addition to the entry of a forfeiture money judgment in the amount of $526,606.95, is warranted. Specifically, the trial evidence established that the defendant received the following bribes from Singh:

(1) $454,279.00 from a no-show job for defendant Linda Mangano; see, e.g., Trial Tr. for 1/30/19 at pp. 1239-60 (Special Agent Spence's testimony regarding the lies that defendant Linda Mangano told to agents about her no-show job); Trial Tr. for 1/31/19 at pp. 1431-32 (Singh's testimony that he paid defendant Linda Mangano approximately $450,000 for the no-show job); Trial Tr. for 2/21/19 at pp. 123-25 (FBI forensic accountant, William DelGais's ("DelGais"), testimony that defendant Linda Mangano received a total of approximately $454,000 from her no-show job during the years 2010 through 2014);

(2) a massage chair worth $3,623.73; see, e.g., Trial Tr. for 1/22/19 at pp. 144-49 (testimony of Brookstone employee that Singh purchased a massage chair for $3,623.73 and had it shipped to defendant);

(3) an office chair worth $3,371.90; see, e.g., Trial Tr. for 1/22/19 at pp. 154-61 (testimony of United Group employee that Singh Hospitality Group purchased a custom

4

made Recaro office chair for $3,371.90, and that the same Recaro office chair is depicted in photographs [Government Exhibits ("GX") 154- 157] of defendant's office);

(4) numerous free meals for defendant, his family and friends, including $42,000 in free meals from Singh's restaurant, H.R. Singletons; see, e.g., Trial Tr. for 1/31/19 at pp. 1445-49 (Singh's testimony that defendant received $42,000 worth of free meals at Singh's restaurant, H.R. Singletons);

(5) vacation expenses, including $19,227.32 in airfare and hotel expenses; see, e.g., Trial Tr. for 1/31/19 at pp. 1430-31 (Singh's testimony about the vacations he financed for defendant and defendant's family); Trial Tr. for 2/21/19 at pp. 128-48 (DelGais's testimony about $19,227.32 in hotel expenses and airfare Singh paid for defendant and defendant's family);

(6) hardwood floors worth $4,105.00; see, e.g., Trial Tr. for 1/22/19 at pp. 163-71 (testimony of Gold Coast Flooring employee that $2,301.81 worth of wood flooring was selected by defendant Linda Mangano and installed in defendant's residence, but paid for by Mike Romeo ("Romeo") through Romeo's company, Wellcraft Home Improvement ("Wellcraft")); Trial Tr. for 1/22/19 at p. 178 (testimony of carpenter that Mike Romeo was Singh's contractor); Trial Tr. for 2/21/19 at pp. 125-28 (DelGais's testimony that Wellcraft paid $2,301.81 for flooring that was installed in defendant's bedroom, and that on the same day the flooring was purchased, Wellcraft was reimbursed $2,305.00 from Singh's company); Trial Tr. for 1/22/19 at pp. 178-83 (testimony of carpenter who was hired, and paid approximately $1,800 to $2,000, by Singh to install hardwood floors and to paint at the defendant's house); and

(7) the Watch; see, e.g., Trial Tr. for 1/22/19 at pp. 118-27, 130-36 (testimony of Betteridge Jewelers salesperson that Singh purchased the Watch for $7,304 and had it shipped to defendant's son, Sal Mangano, at defendant's address).

See also GX 1317.[1]

A conservative estimate of the total amount of the bribes, not including the Watch, which the government seeks to directly forfeit, the numerous free meals and vacation expenses, equals a total of $526,606.95. Accordingly, it is respectfully submitted that defendant is liable for a forfeiture money judgment in the amount of $526,606.95. See Proposed Order of Forfeiture, attached hereto as Exhibit B.

---

[1] GX 1317, and the pages of relevant testimony cited herein, are collectively attached as Exhibit A.

5

IV.    <u>Conclusion</u>

        For the foregoing reasons, the government respectfully requests that the Court order the forfeiture of the Watch and impose a forfeiture money judgment against the defendant in the amount of $526,606.95, as part of the defendant's sentence.

                                                  Respectfully submitted,

                                                RICHARD P. DONOGHUE
                                                United States Attorney

                                 By:    /s/ *Madeline O'Connor*
                                            Madeline O'Connor
                                            Assistant U.S. Attorney
                                            (631) 715-7870

Enclosures
cc:    Counsel of Record (by ECF)