UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
UNITED STATES OF AMERICA

                                                        Ind. No. 16 CR 540

-against-

EDWARD MANGANO, and
LINDA MANGANO                         **NOTICE OF MOTION**

                       Defendants.
----------------------------------------------------------X

      PLEASE TAKE NOTICE, that upon the accompanying Affirmation of Kevin J. Keating, the undersigned will move before United States District Judge Joan M. Azrack, located at 100 Federal Plaza, Central Islip, New York, at a time and date to be determined by the Court, for the following relief: (a) reconsideration of Defendant's pretrial motion to dismiss on statute of limitation grounds; (b) a judgment of acquittal pursuant to FRCP Rule 29, (c) a new trial pursuant to FRCP Rule 33; and (d) for permission to file the instant motions out of time, pursuant to FRCP Rule 45(b).

Dated: Garden City, New York
        January 27, 2020

                                                             Respectfully submitted,

                                                     By:   /s/ Kevin J. Keating
                                                                  Kevin J. Keating, Esq.
                                                                  Matthew w. Brissenden, Esq.
                                                                  *Counsel for Edward Mangano*
                                                                666 Old Country Road, Suite 900
                                                                Garden City, NY 11530
                                                               (516) 222-1099

To:    Clerk of the Court
        All Counsel

```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
UNITED STATES OF AMERICA
                                                Ind. No. 16 CR 540
     -against-
                                                AFFIRMATION IN
EDWARD MANGANO,                                 SUPPORT OF DEFENDANT'S
LINDA MANGANO and                               MOTION
                    Defendants.
-----------------------------------------------------------X
```

KEVIN J. KEATING, an attorney duly authorized to practice law before this Court, hereby affirms the following under the penalties of perjury:

1. I am counsel for the Defendant Edward Mangano in the above-captioned matter. I am submitting this affirmation in support of a motion for: (a) reconsideration of Defendant's pretrial motion to dismiss on statute of limitation grounds; (b) a judgment of acquittal pursuant to FRCP Rule 29; (c) a new trial pursuant to FRCP Rule 33; and (d) for permission to file the instant motions out of time, pursuant to FRCP Rule 45(b). All such motions are based upon an intervening development of the law, as signaled by the Court of Appeals recent decision in *United States v. Silver*, Docket No. 18-2380 (2d Cir. January 21, 2020).

A. **Pretrial Motions to Dismiss on Statute of Limitation Grounds**

2. Prior to the original trial in this matter, defense counsel moved to dismiss the bribery counts as they related to the Town of Oyster Bay loan guaranty, arguing that such allegations fell outside the statute of limitations. Specifically, counsel for Mangano first raised the issue in their August 25, 2017 omnibus motion. *See* Docket Entry 79. In those original moving papers, counsel for Mangano focused particularly upon Counts One and Two of the Indictment, charging Federal Program Bribery. Because 18 U.S.C. § 666 is not a continuing offense, counsel

1

argued that the purported Town of Oyster Bay scheme was a completed offense once the June 9, 2010 concession amendment was executed. *See* id. at p. 23-25. As a result, we argued that such counts fell outside the statute of limitations.

3.  Thereafter, counsel for John Venditto filed motion papers expanding the statute of limitations argument to Counts Three and Four, charging Honest Services Fraud. *See* Docket Entry 84-7 at p. 27. In making this additional argument, counsel for Venditto specifically relied upon the Second Circuit's 2017 *Silver* decision ("*Silver I*"). *See United States v. Silver*, 864 F.3d 102 (2d Cir. 2017). The relevant portion of that decision related to Sheldon Silver's ongoing relationship with Dr. Robert Taub. Starting in 2003, Dr. Taub had begun referring mesothelioma patients to a law firm that was associated with Silver, allowing Silver to collect lucrative referral fees. In exchange, Silver had, over the years, undertaken various actions for the benefit of Dr. Taub. Most notably, from 2004 through 2007, Silver arranged for Dr. Taub to receive state grant money for mesothelioma research. That specific aspect of their *quid pro quo* relationship, however, ended in 2007, when Silver told Taub he could not longer arrange for such grants. Nevertheless, Taub thereafter continued to refer matters for Silver's benefit, and Silver sought to undertake various *other* actions for the benefit of Taub. Among other things, in 2011 he sponsored a State Assembly resolution honoring Dr. Taub.

4.  The 2017 *Silver* decision – cited by counsel for Venditto – appeared to suggest that the referral-for-grant money portion of the scheme was outside the statute of limitations, and could not serve as a basis for conviction. Specifically, counsel quoted the following excerpt from the 2017 *Silver* decision:

> In this case, the statute of limitations is critical to our analysis. As previously noted, both honest services fraud and Hobbs Act extortion charges have a five-year statute

> of limitations…Only three acts proven by the Government fall within the statute of limitations: obtaining an Assembly resolution honoring Dr. Taub, agreeing to assist Dr. Taub with acquiring permits for a charity race, and helping Dr. Taub's son secure a job with a non-profit receiving state funding. Of those acts, only the Assembly resolution clearly remains an "official act" under *McDonnell*. As such, the jury may have convicted Silver by relying on acts within the statute of limitations period that are no longer "official" under *McDonnell*.

*Id.* at 120-121

5. Analogizing to *Silver*, counsel for Venditto argued that the Town of Oyster Bay bribery scheme charged in Counts One through Four was likewise outside the statute of limitations. In Mangano's Reply Memorandum, dated December 11, 2017, counsel for Mangano joined in such application. *See* Docket Entry 102, p. 30.

6. In response, the Government argued that the Defendants' arguments were moot, given the Government's reliance upon an "as opportunities arose" "stream of benefits" theory, which treated the various *quid-pro-quo* objects – TOB, OEM, and Bread and Rolls – as one overarching scheme. As the Government argued:

> . . . the defendants' motions to dismiss these counts misconstrue the charged scheme. For example, in support of his motion to dismiss, Mangano appears to tie a specific alleged bribe with a specific alleged transaction – that is, L. Mangano's first paycheck with the June 2010 concession amendment between the TOB and Co-Conspirator #1 – and argues that the bribery was allegedly completed in 2010 and therefore outside the statute of limitations.
>
> However, Mangano's argument wholly ignores the fact that the Indictment charges him with a stream of benefits theory of bribery and honest services fraud and the government is not obligated to prove that each payment was in exchange for a specific official action. . .
>
> Both Mangano and Venditto are charged with orchestrating a single "as opportunities arose" scheme, which ran from approximately January 2010 through February 2015.

*See* Docket Entry 90 at p. 42 (internal citations omitted).

3

7.      This Court ultimately accepted the Government's reasoning, and declined to dismiss the TOB allegations contained in Counts 1-4. In doing so, the Court specifically rejected defense counsel's reading of the 2017 *Silver* decision:

> In *United States v. Silver*, the Second Circuit explained that the government "need not prove that an official act occurred within the statute of limitations period." . . . Rather, the government would only have to "prove that some aspect of the particular *quid pro quo* scheme continued into the statute of limitations." *Silver*, which involved honest services fraud, disposes of Venditto's argument that Count 4, the honest services fraud charge, cannot be based on the June 2010 amendment because of the statute of limitations.

*See* Docket Entry 137 at p. 9.

**B.      2019 Silver Decision**

8.      On January 21st, the Second Circuit Court of Appeals issued *Silver II* in the wake of Sheldon Silver's retrial conviction. *See United States v. Silver*, Docket No. 18-2380 (2d Cir. January 21, 2020). That decision makes clear that the logic employed by the Government and the Court to justify its statute of limitations ruling was incorrect.

9.      *Silver II* clarifies the contours of the "stream of benefits/as the opportunities arise" theory of liability, and seeks to reconcile that theory with the Supreme Court's holding in *McDonnell v. United States*, 136 S.Ct. 2355 (2016). While the Circuit declined to hold that the theory was invalid in the wake of *McDonnell*, it also made clear that there can be no such thing as a completely open-ended *quid pro quo* arrangement, whereby benefits are conferred in return for an indefinite commitment to perform official acts with respect to some, as-of-yet undefined subject matter. Rather, the *quid pro quo* must involve a defined subject matter – a specific objective which the public official promises to advance on behalf of his or her beneficiary. While the means to be

4

employed need not be specified, there must be a promise to act on a specific, defined matter. As the Court explained:

> Thus, for an official to promise to perform an official act—and thereby engage in the prohibited *quid pro quo*—the official must promise to act *on* an identified "question, matter, cause, suit proceeding, or controversy" at the time of the promise.
>
> This point is illustrated in the context of this case by considering the following example: An official accepts a bribe, stating to the payor that she will "take official acts as the opportunities arise." In other words, the official has promised to take— as the opportunities arise—"*any* decision or action on any question, matter, cause, suit, proceeding or controversy [that] may at any time be pending," 18 U.S.C. § 201(a)(3) (emphasis added), a promise so vague as to be meaningless. The official has not agreed to take official action on a properly defined—*i.e.*, focused, concrete and specific—question or matter. The official has failed to offer a *quo*. Absent any additional specificity, criminal liability could attach to any later action the official takes so long as the official is exercising some ability granted to him or her by law, regardless of the fact that the official essentially promised nothing in return for the payment.

*Silver II* at pp. 31-32.

10.     The foregoing limitation has important ramifications for the Court's statute of limitations analysis. *Silver*, like this case, involved allegations of bribes paid regularly and over the course of many years, during which time Silver allegedly intervened with respect to multiple *different* "questions, matters, causes, suits, proceedings, or controversies." Hence, while the arrangement started out as a referral-for-state-grants *quid pro quo*, that aspect of the scheme was completed as of 2007. And because the Court held that there is no such thing as an open-ended, "as opportunities arise" bribery scheme, it was not sufficient for the Government to argue that Silver provided additional or different benefits to Dr. Taub later in time. Rather, the Government was required to prove *that particular* scheme – the mesothelioma grant scheme – extended into the statute of limitations period. Furthermore, the Court held that was it insufficient to merely show that Silver continued to receive referral fees *after* 2007. As the Court explained:

5

Because Silver refused to award additional HCRA grants to Taub after 2007—prior to the limitations period—the Government "need[ed] . . . [to] prove that some aspect of the particular *quid pro quo* scheme continued into the statute of limitations period." *Silver I*, 864 F.3d at 122. It did not.

Although Taub's referrals continued into the limitations period, until at least 2013, the Government does not contend that those referrals constituted "back pay" for the 2005, 2006, or 2007 grants. Indeed, by 2007 Silver had told Taub that the HCRA grants would cease, and Taub himself testified that the post-2010 referrals were, instead, intended to curry generalized goodwill.

### C.  Applicability of *Silver II* in the Present Case

11. The parallels between the facts of *Silver* and those of the instant case are striking. As in *Silver*, the Government relied upon an open-ended stream of benefits theory at trial – its primary thesis being that Edward Mangano "was placed on retainer" to help Harendra Singh "on an as needed basis, as opportunities arose." *See* Superseding Indictment ¶¶ 7; TR 29, 30, 31, 1717, 3727, 3768, 3788, 3820, 3821. The Court's jury charge – which closely mirrored the one provided in *Silver* – validated such theory by instructing the jury that: "It is sufficient if the government proves that the defendant you are considering accepted a thing of value in exchange for the promise or performance of official acts by the defendant on an 'as needed' basis when the opportunity presented itself." TR 4518.

12. Nevertheless, the evidence clearly set forth three, completely distinct "questions, matters, causes, suits, proceedings, or controversies" in which Mangano allegedly agreed to intervene, at different times: (1) the TOB loan guaranty matter, which allegedly commenced in January of 2010, and culminated with Mangano's brief attendance at an April 28, 2010 meeting; (2) the OEM emergency food contract, which was issued in October/November 2012; and (3) the Nassau Jail bread and rolls contract matter, which commenced with a purported meeting in late 2010, and continued through the award of such contract in 2012.

13. The jury, of course, acquitted Mangano of misconduct in connection with OEM and the Nassau County Jail. As such, the *sole* basis of their verdict was the TOB loan guaranty – which took place entirely outside of the statute of limitations.

14. While the Government was permitted to present the case as a single unitary scheme to assist Singh "on an as needed basis, as opportunities arose," *Silver II* clarifies that this is no longer a valid theory of prosecution. As such, it cannot be used to evade the statute of limitations.

15. Nor is it sufficient for the Government to point to the continued payment of Linda's salary after-the-fact. As in *Silver II*, there was no testimony that Singh continued to pay Linda's salary for <u>four years</u> as "back pay" for the TOB matter. To the contrary, Singh testified that he kept her as an employee to have Mangano on "retainer," for the prospective assistance he might provide in *any and all governmental matters*:

> It was like, you know, keeping the County Executive on call, retainer and also making sure that either it was a loan guaranty from Town of Oyster Bay, Nassau County, it was a work with fire marshals, Health Department or really I mean anything, anything I needed in Town of Oyster Bay, Nassau County or even some other level of the government, if I needed something I had to make phone call and get it done.

TR 1717.

16. Such testimony closely parallels that offered by Dr. Taub in the *Silver* case, in explaining why he continued to refer mesothelioma cases even after the conclusion of the grant scheme. As Dr. Taub stated in an email, "I will keep giving cases to Shelly because I may need him in the future – he is the most powerful man in New York State." *See Silver II* at p. 42. In the wake of *Silver II*, such an ill-defined "understanding" is too amorphous to support bribery charges.

17. Accordingly, the TOB bribery scheme – like the grant scheme in *Silver* – took place outside the statute of limitations. We respectfully submit that, in light of the Court of Appeals'

7

recent holding in *Silver II*, and the jury's limited verdict in this case, the Court should either: (a) reconsider and grant the Defendant's pretrial statute of limitations motion; (b) enter a judgment of acquittal on statute of limitations grounds; or (c) order a new trial based upon the improper legal instruction which was provided to the jury.

18. "Although the federal and local rules of criminal procedure do not specifically provide for motions for reconsideration, such motions are tacitly accepted in criminal cases by virtue of Local Crim. R. 49.1(d), which requires a movant to submit a 'memorandum setting forth concisely the matters or controlling decisions which counsel believes the Court has overlooked' . . . Under this standard, 'reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked . . . that might reasonably be expected to alter the conclusion reached by the court.' 'The major grounds justifying reconsideration are an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *United States v. Ahmed*, No. 12-CR-661 SLT S-2, 2015 WL 2084633, at *1 (E.D.N.Y. Apr. 30, 2015) (internal citations omitted), citing *United States v. Baldeo*, No. 13–CR–125 (PAC), 2015 WL 252414, at *1 (S.D.N.Y. Jan.20, 2015), *United States v. Leaver*, 358 F.Supp.2d 273, 277 n. 14 (S.D.N.Y.2005); *United States v. James*, No. 02–CR–0778 (SJ), 2007 WL 914242, at *3 (E.D.N.Y. Mar.21, 2007); *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir.1995); *Virgin Atlantic Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir.1992).

19. The instant situation is appropriate for reconsideration because it is based upon a recently decided and controlling decision out of the Second Circuit which substantially clarifies the applicable law, and could reasonably be expected to alter the conclusion reached by this Court

on the Defendants' statute of limitations motions. Indeed, in light of *Silver II*, it is now clear that the analysis originally employed by the Court in addressing the statute of limitations issue was wrong, and that the correct application of the law would have mandated a different result.

20. Similarly, the Defendant moves for a judgment of acquittal on bribery counts One through Four, pursuant to Rule 29, based upon the Government's failure to prove at trial that the TOB scheme – the sole basis of conviction here – took place within the statute of limitations. *See Silver II* at p. 70 (dismissing mesothelioma counts outright, based upon lack of trial evidence establishing acts within statute of limitations); *United States v. Yannotti*, 415 F. Supp. 2d 280, 291 (S.D.N.Y. 2005) (granting Rule 29 motion based on Government's failure to prove acts within statute of limitations).

21. In the alternative, Defendant moves to set aside the verdict under Rule 33, based upon the instructional error which occurred in charging the jury with respect to the Government's "as opportunities arose" theory of liability. The charge did not require the jury to find that, at the time the bribe was accepted, the Defendant promised to take official action on a *specific and focused question or matter*. In the wake of *Silver II*, it is clear that such instruction was erroneous.

22. Moreover, permitting the Government to proceed under such an illegitimate theory was not harmless error, because it effectively deprived the Defendant of his ability to raise an otherwise valid statute of limitation defense with respect to the TOB allegations – the sole bribery scheme which the jury ultimately relied upon to convict the Defendant. Indeed, the instant case closely parallels the situation in *Silver II*, where the Second Circuit ruled that an identical instructional error was *not* harmless, because a properly instructed jury could have rejected the mesothelioma counts on statute of limitation grounds. *Silver II* at p. 64.

23. Finally, the Defendant seeks permission to file these applications – for reconsideration, a judgment of acquittal, and for a new trial – out of time. As the Government is sure to point out, a motion for reconsideration must generally be filed within 14 days of the original order (*see* Local Rule 6.3 Motions for Reconsideration or Reargument); Rule 29 and Rule 33 motions must be filed within 14 days of the guilty verdict.

24. Nevertheless, FRCP Rule 45(b)(1)(B) provides this Court with the authority to extend such time limitations "because of excusable neglect." "There is no dispute that a significant intervening change in law constitutes a valid basis to extend time under Rule 45(b)(1)(B)." *United States v. Kirsch*, 151 F. Supp. 3d 311, 315 (W.D.N.Y. 2015), *aff'd*, 903 F.3d 213 (2d Cir. 2018) *citing United States v. Sprouse*, 2011 WL 2414322, at *1 (W.D.N.C. June 10, 2011) (reversed on other grounds); *United States v. Maricle*, 2010 WL 3927570, at *3 (E.D.Ky. Oct. 4, 2010). "In fact, courts have consistently held that similar circumstances present a valid basis for extending time under Rule 45(b)(1)(B). *United States v. Sepulveda*, 2019 WL 5704398, at *9 (S.D.N.Y. Nov. 5, 2019), *citing United States v. Abu Khatallah*, 316 F. Supp. 3d 207, 210 n.3 (D.D.C. 2018) (considering an intervening change in the law "a textbook case of excusable neglect" for purposes of Rule 45(b)(1)"); *see also United States v. Gilkeson*, 2006 W.L. 2190720, fn. 1 (N.D.N.Y. Aug. 1, 2006) (granting government's Rule 45 motion to hear motion for reconsideration out of time).

25. In this instance, defense counsel literally could not have brought these motions any sooner. Counsel has sought to act with all possible due diligence, by filing the instant motion within days of *Silver II's* issuance. Because that decision represents a significant new holding which clarifies the law in a manner which invalidates the Government's core theory of liability, and substantially undercuts this Court's prior statute of limitation rulings, it provides a compelling

basis for the Court to revisit these issues, notwithstanding the statutory time limits. Accordingly, we are respectfully asking the Court to grant the Defendant's application to hear such arguments out of time.

## CONCLUSION

26. Because the Second Circuit has now held that the Government's "as opportunities arose" bribery theory is invalid; because that theory of liability prevented the Court or the jury from conducting an appropriate statute of limitations review; because the evidence was insufficient to establish that the Town of Oyster Bay loan scheme took place within the statute of limitations; and because this was the *only* scheme which the jury relied upon to convict the Defendant, we are respectfully moving for reconsideration of our prior motion to dismiss on statute of limitation grounds. Alternatively, Defendant moves for a judgment of acquittal, and/or a new trial pursuant to FRCP Rule 33. Finally, defense counsel respectfully asks the Court to extend the time to hear such applications pursuant to FRCP Rule 45(b).

Dated: Garden City, New York
       January 27, 2020

>                       Respectfully submitted,
>
>                   By: /s/ Kevin J. Keating
>                       Kevin J. Keating, Esq.
>                       Matthew W. Brissenden, Esq.
>                       *Counsel for Edward Mangano*
>                       666 Old Country Road, Suite 901
>                       Garden City, New York 11530
>                       (516) 222-1099