UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
UNITED STATES OF AMERICA

    -against-

EDWARD MANGANO,
LINDA MANGANO and

                Defendants.
--------------------------------------------------------X

Ind. No. 16 CR 540

**POST-HEARING
MEMORANDUM IN FURTHER
SUPPORT OF DEFENDANT'S
MOTION FOR A NEW TRIAL
PURSUANT TO FRCP RULE 33**

<u>**PRELIMINARY STATEMENT**</u>

In February of 2019, Harendra Singh testified for over a week in the second

trial of Edward Mangano.   Pursuant to his cooperation agreement with the

Government, Singh provided unequivocal testimony that Edward Mangano was the

driving political force behind a 2010 resolution authorizing the Town of Oyster Bay

to "indirectly" guaranty loans taken out by Singh's two corporate entities – SRB

Convention and Catering Corp. and SRB Concession, Inc.  Singh testified that such

loans were a desperately-needed lifeline for his business, given the crippling debt

which he had sustained; Singh further told the jury that he would not have been able

to obtain the Town's cooperation without Mr. Mangano's intervention.  Indeed,

Singh testified that he hired Linda Mangano for the express purpose of obtaining

Mr. Mangano's political backing on this issue.

Six months later, Mr. Singh attended a closed-door, civil deposition where he

provided sworn testimony in connection with a lawsuit brought by Singh against two

1

individuals who had purchased shares in SRB Convention and Catering Corp.  At issue was whether Mr. Singh had defrauded such individuals by failing to disclose SRB's false books and records, rampant criminal conduct, and massive debt. Despite the clear factual overlap between the civil case and the criminal case, Mr. Singh elected not to tell prosecutors about his plans to provide such sworn testimony.

Mr. Singh's August 2019 deposition testimony stands in stark contrast with his February 2019 trial testimony.  Most notably, Singh denied that his alleged bribery of Edward Mangano "related to" SRB Convention and Catering Corp., asserting that payments to Mangano had "nothing to do with the Town of Oyster Bay."  While admitting to doing "nice things" for Town officials, Singh denied that such favors were provided in exchange for the officials' intervention on the "particular matter" of the SRB concession amendments.  Moreover, Singh asserted that he could not say – until after he was sentenced – whether his plea allocution in this case was "true or not true."

In January of 2020, the undersigned counsel moved to set aside Mr. Mangano's conviction based upon newly discovered evidence of trial perjury.  As set forth in that motion, the proper inquiry in this context is: (a) whether the witness perjured himself; and (b) whether such perjury was material  The materiality standard, in turn, hinges upon whether prosecutors knew or should have known of

the perjury.  If the answer to this question is yes, reversal is "virtually automatic." In cases where the government was unaware of the witness' perjury, a new trial is warranted if the testimony was material, and the court is left with a firm belief that but for the perjured testimony, the defendant would most likely not have been convicted.

The Government responded in a memorandum dated June 5th, in which it asserted that Mr. Singh's deposition testimony was not actually inconsistent with his trial testimony.  According to the Government, Singh's answers in the deposition were the product of "imprecise" and "confusing" questions by defendants' counsel. Alternatively, the Government contended that any perjurious testimony from Singh was immaterial in light of other evidence adduced at trial.

On April 20th, this Court held a hearing to determine whether Mr. Singh's deposition testimony could be reconciled with his trial testimony.  At that hearing, Mr. Singh provided a series of explanations for his contradictory testimony that ranged from the incredible to the incoherent.  He also perjured himself on unrelated matters.

For the reasons set forth below, this Court should find that Mr. Singh deliberately provided sworn testimony at his deposition which contradicted his trial testimony on highly material issues, that Mr. Singh's "explanations" for such

testimony are patently incredible, and that Mr. Singh perjured himself at the recent hearing.

Finally, this Court should hold that Singh's deposition testimony warrants a new trial, because it is unlikely that a jury presented with such newly discovered evidence would have convicted Mr. Mangano with respect to the Town of Oyster Bay allegations.

## ARGUMENT

### I.   SINGH'S ATTEMPTS TO RECONCILE AND RATIONALIZE HIS DEPOSITION TESTIMONY WERE PATENTLY INCREDIBLE

At the hearing, Singh testified that inconsistencies between his trial and deposition testimony were the result of "incomplete questions" on the part of his interrogator, as well as the "duress" which Singh was experiencing due to the "hostile and intimidating environment" of the deposition.  In response to leading questions from the Government, Singh repeatedly asserted that what he was "trying to say" at the deposition was, in fact, the polar opposite of what he actually said.  As set forth below, a close examination of Singh's varying explanations reveals them to be utterly incredible.

**A.    According to Singh, He Denied that**
**Payments to Edward Mangano "Related to"**
**SRB Convention and Catering Corp. Because**
**He Believed that the Word "Related" Meant "Related Only"**

At the deposition, Singh *repeatedly* testified that his alleged payment of "bribes" to Edward Mangano (and others) did not relate to: (a) SRB Convention and Catering Corp. ("SRB Convention"); or (b) any amendment to SRB Convention's concession agreement.  Singh did not say this just one time – rather, he provided persistent testimony to this effect throughout the course of his deposition.  Below are several examples from the deposition transcript.

Q.    In terms of the bribery of the town officials, does that relate to S.R.B. Convention and Catering Corp.?

A.    What do you mean relate to?

Q.    Does it have anything to do with S.R.B. Convention and Catering Corp.?

A.    The person who was charged that I bribe him was found not guilty, the town supervisor, John Venditto.  <u>So, I don't know about a bribe</u>.

Dep. TR at p. 190

***

Q.    Didn't you plead guilty to bribing Mr. Mangano?

A.    Yes. I did.

Q.    Why did you plead guilty to bribing him?

A.    I pled guilty that his wife had a job. You can see in the transcript what I pled guilty and what I said.

Q.    Yes, but I am asking you, did pleading guilty <u>relate to S.R.B. Convention and Catering Corp</u>.?

A.    <u>I do not believe so</u>.

Dep. Tr. at p. 191.

&ast;&ast;&ast;

Q.    As far as what you pled guilty to, not what the court found you guilty or not guilty of, did you pleading guilty to bribing Mr. Venditto <u>have to do with</u> S.R.B. Convention and Catering Corp.?

A.    I don't recall.  <u>I do not believe so</u>.

Dep. TR at p. 191

&ast;&ast;&ast;

Q.    In terms of the concession agreement with the Town of Oyster Bay and S.R.B. Convention and Catering Corp., did you bribe any town official to get any amendment to that concession agreement?

A.    <u>No. I did not</u>. I asked them to extend it, and they did. I was working for a very long time at the town facility and doing a good job.

Dep. TR at p. 203

&ast;&ast;&ast;

Q.    So, you did not bribe a town official to get an amendment to the 2001 concession agreement?

A.    As I said, I did nice things for a lot of people in the town.  <u>Did I particularly bribe somebody for S.R.B. Concession? No</u>.

6

Dep. TR at p. 205.

In an effort to explain such testimony, Singh told the Court at the hearing that he testified in this fashion because: (a) he understood the word "relate" to mean "relate only;" and (b) because his bribes *did not* relate *only* to SRB Convention (the Woodlands), but were *also* paid to obtain a simultaneous amendment to the SRB Concession, Inc. (Tobay) concession agreement.  At the Government's prompting, Singh offered this explanation on multiple occasions throughout the hearing.  Hence, Singh testified:

> Well, what -- what I was trying to say, this attorney was focusing on SRB Convention.  My bribe to Ed Mangano and John Venditto and Lenny Genova and Freddy Mei was both SRB Convention, as well as SRB Concession, which was Tobay Beach.

Hr. at p. 39.

***

> You know, so, his question was very specific, only to SRB Convention and Catering, and obviously my bribe was with both companies.

Hr. at p. 42-43.

***

> Well, what I mean by that, that he was only focusing on SRB, and my bribe to Ed Mangano and to John Venditto, Lenny Genova and Freddy Mei was total for SRB Convention as well as SRB Concession, which was Tobay Beach.

7

Hr. at p. 43.

***

Well, what basically I was trying to tell that listen, my bribe was both for SRB Convention and SRB Concession.

Hr. at p. 44.

To the extent that this Court is being called upon to make an assessment of Mr. Singh's credibility, it really need go no further than this testimony, which is on its face, obviously perjurious.  At his deposition, Singh *repeatedly* denied that he paid bribes to secure amendments to SRB Convention and Catering Corp.'s concession agreement.  He was clearly *not* "trying to tell" defendants' counsel that his bribes related to *both* SRB Convention and SRB Concession.

Indeed, the questions posed to Singh at the deposition could not have been any clearer.  At the very outset of such questioning, Singh specifically asked defendant's counsel to clarify what he meant by "relate to"; counsel explained that that he meant "*anything to do with*."   Dep. Tr. at p. 190.

Hence, Singh knew that he was being asked whether his purported bribes had <u>anything to do with</u> SRB Convention and Catering Corp.  In fact, on another occasion he was actually asked, point-blank, whether his bribery plea "[*had] to do with* S.R.B. Convention and Catering Corp.," to which Singh responded, "I do not

8

think so."   Likewise, Singh *flatly denied* bribing "any town official to get any amendment to that concession agreement."

These were not mistakes; Singh was not confused about the questions, and he did not "mean" to say something different.   Singh's was *intentionally* providing testimony which he knew to be inconsistent with his trial testimony.   Indeed, Singh actually acknowledged such inconsistency during the deposition, when he told defendants' counsel that he could not say whether he *actually* bribed John Venditto, notwithstanding his guilty plea.   *See* Dep. Tr. at p. 192 ("That is why the inconsistent answer is there too.").

Singh clearly believed that he was free to testify as he pleased at the deposition; that prosecutors would never be the wiser, and that his civil testimony would not find its way before this Court.

### B.   Singh Provides No Coherent Explanation as to What He Meant When He Testified That Payments to Edward Mangano "Had Nothing to Do with the Town of Oyster Bay"

Singh not only testified that his payments to Edward Mangano were unrelated to SRB Convention, he further testified that Mangano had nothing to do with the decision-making process in Oyster Bay – the very crux of Mr. Mangano's defense at trial.   Hence, at his deposition, Mr. Singh testified as follows:

Q.      What about Ed Mangano?

A.      <u>Ed Mangano is not Town of Oyster Bay. He is Nassau County</u>.

Q.      Wasn't that part of the allegation that you paid bribes to him to gain advantage for the Woodlands, the S.R.B. Convention and Catering Corp.?

A.      That's up to the judge and court. That's not me. <u>It is the county. It had nothing to do with the Town of Oyster Bay.</u>

Dep. Tr. at p. 191.

At the hearing, the Government sought to quickly gloss over such testimony, giving it only perfunctory attention:

Q.      When you said on lines 10 through 12, "It is the county.  It had nothing to do with the Town of Oyster Bay," what did you mean?

A.      What I meant that he was a county -- a county official, but obviously he had influence in Town of Oyster Bay.  He was county executive.

Hr. at p. 45.

When Mr. Singh claims that this is what he "meant" at the deposition, that is a transparent falsehood.  Try as it might, the Government cannot reconcile Mr. Singh's deposition testimony by simply claiming that he "meant to say" the polar opposite of what he *actually* said at the time.  Words have meaning, and such meaning is not infinitely malleable.

10

When Singh told defendant's counsel that Ed Mangano was "not Town of Oyster Bay," and that any alleged bribes paid to Mr. Mangano "had nothing to do with the Town of Oyster Bay," he was obviously *not* trying to convey that Mangano controlled or influenced the decision-making process within the Town.  He was conveying the exact opposite.  In short, this is not what Singh "meant" at the time; rather, it is what he *must say now*, if he hopes to salvage his cooperation agreement.

The bottom line is this – neither the Government nor Mr. Singh can provide any coherent explanation for this deposition testimony, because there is none.  At his deposition, Singh denied that "bribes" to Ed Mangano had anything to do with the Town or S.R.B. Convention and Catering Corp.; there is no amount of *post-hoc* rationalization which can reconcile this sworn assertion with his trial testimony.

### C.     Singh Claims That He Could Not Confirm Whether His Plea Allocution Was Truthful, Because He Was "Under Stress"

At the deposition, Singh was asked what might have been the simplest possible question – whether his plea allocution in the criminal case was "true." Singh's answer to this softball of a question was distressingly evasive:

> Q.     . . . Everything is true in your plea, Defendant's Exhibit L, and you are not disputing that, correct?

> A.     That is between me and my attorney. That is what I pled guilty and what I didn't. If it is true or not true, that will be discussed after my sentencing. I cannot discuss anything right now with you if it is true or

not true. The details of the case under the advice of my counsel. I cannot discuss that.

Dep. Tr at. P. 198.

At the hearing, Singh asserted that he answered in this fashion because: (a) Defendant's attorney already had Singh's plea allocution; and (b) because Singh was "intimidated."

> A.      What I was saying in there that he knew that I was -- what I had pleaded guilty, who I bribed. He knew that I bribed Ed Mangano. He knew that I bribed John Venditto. He knew that the loans were for both facilities, and I had bribed Lenny Genova and Freddy Mei, and he was asking the question, so I was really giving him a answer which was, you know, probably under duress and under stress. So I just gave the answer that, Hey, listen, you have nothing to do, I'll talk to my attorney. And, you know, was it right answer? I don't know, but I was not paying any attention to him.  It was a hostile environment. It was a intimidating environment. And, you know, I answered whatever came in my mind at that time under the duress.

The first part of Singh's answer makes no sense.  Defendants' counsel was not asking what was in Singh's plea allocution – as Singh notes, he already knew that.  Instead, counsel was simply asking whether such allocution was *true*.  It is unclear what possible impediment would have prevented Singh from confirming this seemingly simple question.  Hr. at p. 51.

As for Singh's alternative explanation – that he was "under duress" due to the "intimidating environment" – the record clearly shows otherwise.  Singh, who was no stranger to civil litigation, was testifying in a closed deposition, in connection

with a lawsuit *which he himself had brought*.  Singh could have sought to invoke his 5th Amendment rights; he could have sought the advice of the Government or even his criminal defense counsel.  The record shows he did none of these things – instead, he attended the deposition without telling anyone, because he was intent on pursuing his lawsuit against Mr. Chopra and Mr. Narang.

Moreover, the record does not support Mr. Singh's contention that the defendants' counsel was acting in a threatening or overbearing fashion.  To the contrary, all questions were posed in a civil and completely professional manner.  If anything, it was *Singh's attorney* who consistently engaged in aggressive, bullying, and obstructive conduct.  And Singh himself was clearly not intimidated; if anything, he treated both the lawyers and the process itself with seeming distain and a sense of impunity.

**D.**     **Singh's Assertion That He Did "Nice Things for People" Does Not Negate the Fact That He Simultaneously Denied Paying Bribes to Obtain Official Action with Respect to Particular Matters**

At the hearing, the Government pointed to various portions of the deposition transcript wherein Singh stated that he had done "nice things" for people in the Town of Oyster Bay over the years.  Dep. Tr. at p. 49, 54, 57.  When asked about this testimony, Singh dutifully responded that what he *really meant* was that he had *bribed* those people.  *See* Hr. at p. 49, 54, 57.

13

There are two problems with this "explanation."  First of all, none of this testimony related to Edward Mangano.  As such, even if this is what Singh meant when he discussed doing "nice things" for Town officials, it in no way affects his simultaneous assertion that payments to *Mangano* did not relate to SRB Convention, and had "nothing to do with the Town of Oyster Bay."

Second, even as to the Town employees, "doing nice things" is not the same as "bribing" – especially under the standard set forth by the Second Circuit in *United States v. Silver*, 948 F.3d 538, 558; 577 (2d Cir. 2020).  As *Silver II* explains, "a public official must do more than promise to take some or any official action beneficial to the payor as the opportunity to do so arises; she must promise to take official action *on a particular question or matter* as the opportunity to influence that same question or matter arises."  *Id*. at 552-553.  "The relevant point in time in a *quid pro quo* bribery scheme is the *moment at which the public official accepts the payment*."  *Id*. at 556.

This is significant, because at his deposition, Singh – while professing to doing "nice things" – repeatedly and consistently denied that those "nice things" were intended as a *quid pro quo* for assistance on any particular matter.  Indeed, on at least four separate occasions during the deposition, Singh expressly denied that

14

there was any understanding that such benefits were conveyed in exchange for the

Town's intervention on a "particular" matter.

> I do not know what was the exact charges to Mr. Venditto directly related to S.R.B. My pleadings were general things which I did for Mr. Venditto. <u>I do not believe it was, oh, in particular you did this</u>. I do not believe that.

> Dep. Tr. 193

***

> Q. You are saying legitimately, but did you bribe town officials to get them to help you get that loan?

> A. No. I <u>didn't particularly bribe somebody, say, hey, do this loan</u>. I had done certain things for them. Later on which was found not guilty of Mr. Venditto.

> Dep. Tr. 194-195.

***

> Q. I want to know what you meant.

> A.    I did nice things for people, you know, and they did nice things for me. <u>It was no particular S.R.B. loan</u>. No. It wasn't one particular thing. No.

> Dep. Tr. 196.

***

> A. As I said, I did nice things for a lot of people in the town. <u>Did I particularly bribe somebody for S.R.B. Concession</u>? No.

> Dep. Tr. 207.

15

This, frankly, was the truth.  Singh lavished Town employees like Venditto with favors over the course of many, many years.  Such special treatment – mostly on small items like comped meals – was intended to assure that Town Officials would be favorably disposed towards Singh in general.  But they were not provided with a specific eye towards obtaining any particular contractual amendment.

Had Singh provided the above-testimony at trial, a properly instructed jury would have been obliged to acquit Venditto.  More importantly – for our purposes – such jury would have been legally obliged to acquit *Mr. Mangano* on Counts 1 and 2, which charged Mangano with aiding and abetting *Venditto* in Venditto's supposed commission of Federal Program Bribery.  *See* TR 3675-3676; TR 4378.

## II.   SINGH LIED CONCERNING UNRELATED MATTERS AT THIS HEARING

Because it is relevant to assessing Mr. Singh's credibility, it must be noted that Singh also perjured himself before Your Honor on issues which had nothing to do with his trial testimony.  Ironically, but perhaps not surprisingly, Singh perjured himself at a hearing which was expressly called to determine whether he had committed perjury.

Most obviously, Singh lied when he was asked whether he had been holding himself out as a "consultant" in the restaurant industry, in violation of his conditions

of release.  Singh, of course, flatly denied this, before realizing that there was a paper trail of his activities, at which point he "pivoted."

Q.     And you didn't act as a consultant in the operation after 24 North?

A.     No. I know the person who bought it. I have -- I go time to time there, but I am not a consultant.

Q.      Because that would run afoul of your bail conditions, correct?

A.      No, that's not the truth. Truth is what I am, I am telling you the truth.

Q.     Mr. Singh, I'd like you to look at the following document.

MR. KEATING: This will be marked as Defense Exhibit A.

BY MR. KEATING: Q. Mr. Singh, is your e-mail address harendravsingh@yahoo.com?

A.     Yes, but I haven't been -- yes.

Q.     Is your phone number 516-207-8746?

A.     Yes.

Q.     Is 24 North located at 4011 Hempstead Turnpike, Bethpage, New York?

A.     Yes.

Q.     Mr. Singh, in December of 2019, did you represent yourself to be a consultant at 24 North restaurant in connection with your purchase of a copy machine for use at that location?

A.      I was there, my son was working there, you know, had employment, and he was working there. And I may have gone there and

17

helped him because he asked me, that, hey, what I should do. So I have gone there.

Q.     And did you represent yourself as a consultant of the entity in connection with the purchase of a leased copy machine?

A.     I may have said that.

Hr. p. 97-98.

Likewise, this Court can and should conclude that Singh lied when he claimed that his failure to inform the Government about his civil deposition was not "intentional," but a mere "oversight" on his part.  Hr. p. 65.  Again, this assertion is simply not credible; Singh failed to tell the Government about the deposition because he was intent on pursuing a monetary recovery from his former partners, and because he knew that prosecutors were likely to object to him testifying in such proceedings. Singh kept this proceeding hidden from the Government because he thought they would never know.

## III.    SINGH'S POST-TRIAL DEPOSITION TESTIMONY MANDATES A NEW TRIAL

Harendra Singh – with the Government's assistance – has sought to convince this Court that his testimony at *both* the trial and the deposition were "true," and that any seeming inconsistencies can be attributed to either sloppy questions or confusion on the part of Singh.  As Mr. Singh assured this Court, "I never lied . . . At my guilty

plea, I told the truth. I told the truth in the other two trials, and I told the truth in here."  Hr. at p. 52.

In reality, "the truth" for Mr. Singh is whatever happens to be advantageous at a particular moment in time.  At the civil deposition, when he was fighting to recover monies from his erstwhile business partners – and when he believed no one was paying attention – Singh swore under oath that his payments to Mangano had nothing to SRB Convention, and that there was no <u>particular</u> *quid pro quo* to obtain amendments to his concession agreements.  But when prosecutors are present, and his 5K agreement is on the line, Mr. Singh will swear up and down that, what he *really meant to say* was the polar opposite: *of course, I bribed such officials*.

For the reasons set forth above, none of Singh's logical contortions or excuses are credible; try as it might to salvage its star cooperator, the Government cannot reconcile the unreconcilable.  The bottom line is that the record supports only two possible conclusions – either Singh lied at trial, when he said Mangano was the driving force behind the Oyster Bay "scheme," or he lied at his deposition, when he swore that Mangano had nothing to do with such scheme.  We respectfully submit that the totality of the evidence supports the former conclusion.

The basis for that conclusion is simple – it is precisely what Singh told the Government during his original proffer sessions, before he negotiated for his release on dubious medical grounds, and it is also what he told multiple individuals (including Fredrick Mei) during recorded meetings and telephone calls before his arrest.

Defense counsel sought to explore this history during the course of the hearing, for purposes of demonstrating: (a) that Singh's deposition testimony was not merely material and exculpatory, but actually truthful, and consistent with his original statements; and (b) that prosecutors knew or should have known that his trial testimony was false.[1]   The Government, however, objected to questions concerning Singh's prior consistent statements, and the Court sustained such objections, in part because it indicated that it was well-familiar with the history of the case and Singh's prior testimony on these subjects.

---

[1]     This latter point is relevant because the materiality standard hinges upon whether "the prosecution knew or should have known of the perjury." If so, "the conviction must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury.  Indeed, if it is established that the government knowingly permitted the introduction of false testimony reversal is virtually automatic." *United States v. Wallach,* 935 F.2d 445, 457 (2d Cir.1991).

Nevertheless, for purposes of determining this motion, we would ask the Court to take judicial notice of the multiple prior statements by Singh which are consistent with his deposition testimony, as summarized in Paragraphs 19-26 of the January 27, 2020 Affirmation of Kevin J. Keating in support of the instant motion. As we noted therein, Singh's early proffer statements *expressly* contradict the Government's trial narrative on virtually every salient point, including the Government's assertions:

· that Harendra Singh offered Linda Mangano a job in January of 2010 – before Mangano initially discussed the loan guaranty with John Venditto.

· that Singh offered the job to Linda for the express purpose of obtaining Mangano's intervention in the Town of Oyster Bay

· that Edward Mangano brought in Rivkin Radler to find a solution to the loan issue

· that Edward Mangano arranged for the April 28th meeting at John Venditto's office

· that the "loans . . . never would have happened without Ed Mangano's involvement, without Ed Mangano's official action."

As we noted, Singh's narrative on these issues did not begin to shift until his sixth proffer session. That shift coincided with Singh's presentation of a hand-written list describing various medical issues, which, Singh claimed, supported his release from the custody. Four days after handing over that list to prosecutors, Singh

21

retracted his earlier claim that the TOB guaranty would have been forthcoming *no matter what*, humbly confessing that:

> H could have asked JV himself but w/o Ed as his backer he would not have gotten guaranty.  H is now realizing that he was not as powerful as he thought.  H realizes now that he was a lesser person.  H could not have gone to JV himself b/c he realized now he didn't have the power w/o Ed.

3500 HS-36, p. 10.

Indeed, this suspect chronology, and the transactional nature of Singh's "shift" supports the conclusion – not only that Singh was lying at trial, but that prosecutors should have suspected that he was tailoring his testimony to serve their ends, as well as his own.  If so, reversal is mandated.

Ultimately, however, regardless of the specific standard this Court chooses to apply, there is no question that this newly discovered evidence is material.  Singh's contradictory testimony goes directly to the two central questions at the heart of this case: (1) whether Edward Mangano – in exchange for things of value – agreed to undertake official action with respect to the Town of Oyster Bay concession amendments; and (2) whether Town Officials (Venditto in particular) promised to take official action on the *particular matter* of the concession amendments, in exchange for things of value.

If believed, Singh's recent testimony – that payments to Mangano had *nothing to do with the Town of Oyster Bay* – would mandate Mangano's acquittal as a principal.  Likewise, Singh's testimony that his favorable treatment of Venditto and other Town officials did not relate to any "particular matter" would have precluded Mangano's conviction on *any* of the bribery-related counts under an aiding and abetting theory.  If such newly discovered evidence is not material, it is hard to imagine what is.

Indeed, even if this Court ultimately concludes that it is simply *impossible* to tell when Singh is lying, such newly discovered evidence would *still be* material.  In this regard, the instant case presents a situation similar to that confronted by the Eighth Circuit in *Rosebud Sioux Tribe v. A & P Steel, Inc*., 723 F.2d 509 (8th Cir. 1984).

*Rosebud* involved a civil suit brought by the Sioux Tribe against an irrigation contractor named A & P Steel.  The Tribe alleged that A & P had secured a lucrative contract through kickbacks paid to certain members of the Tribe, including an individual named Lone Dog.  Such bribes were allegedly paid through an attorney named Strain.  Pretrial, Lone Dog's deposition was taken; he denied receiving kickbacks, and testified that payments from Strain related to Strain's purchase of

23

hay.  Lone Dog's deposition testimony was then read to the jury at trial, and a verdict was returned for A & P.

Post-trial, however, Lone Dog provided contradictory testimony in a grand jury proceeding, wherein he admitted to receiving payoffs from Strain.  Upon learning of such testimony, the Tribe moved to set aside the jury's verdict.  The District Court denied the motion, but on appeal, the Circuit reversed.  It noted that Lone Dog's post-trial testimony was completely contrary to his trial testimony, and pertained to the central issue at trial; such new testimony changed "[t]he entire complexion of the case. . ." *Id*. at 516.  Indeed, the Court went on to hold that it need not determine *which version* of Lone Dog's sworn testimony was actually true, because a new trial was mandated in *either* case:

> The grand jury testimony flatly contradicts the testimony Lone Dog gave in two other proceedings; he testified that he had accepted payoffs from Strain and that Strain asked him to lie when the deposition was taken. If we assume that Lone Dog testified truthfully before the grand jury, then the materiality of the evidence is apparent. As the Tribe points out, the perjured deposition testimony is not "some inconsequential fact". Rather, it is a fact "which binds all of the other facts together" and tends to prove the Tribe's allegations. . .
>
> However, even if we make no assumptions about the truth of the testimony Lone Dog gave on three separate occasions, the inconsistent stories still are material evidence in this case. Lone Dog was a principal witness in A & P's case. At the very least, his inconsistent stories demonstrate that he is a liar and, as such, a witness whose testimony is to be discredited. The deposition testimony is significant enough to have swayed the jury to return a verdict for A & P. At a minimum, the

24

Tribe is entitled to an opportunity to present *all* the relevant facts to a jury. For all these reasons, we conclude that the evidence of Lone Dog's grand jury testimony is such that a new trial probably would produce a new verdict.

*Id. at* 516–17.

The same result is dictated here.  There is ample evidence to conclude that Singh perjured himself at trial in a desperate bid to gain his freedom, and that the version of events which he has described both *before* and *since* the trial was the truth. But even if the Court concludes that, with Singh, it is simply impossible to discern fact from falsehood, that should be enough to secure a new trial.  As in *Rosebud*, Singh was the central witness in the Government's case; his newly discovered, sworn testimony goes to the pivotal issue at trial, and changes "the entire complexion of the case."  Indeed, had the jury been able to consider such evidence, "there was a significant chance that this added item, developed by skilled counsel . . . could have induced a reasonable doubt in the minds of enough jurors to avoid a conviction." *See United States v. Wallach*, 935 F.2d 445, 456 (2d Cir. 1991) *citing United States v. Seijo*, 514 F.2d 1357, 1364 (2d Cir. 1975).   Under these circumstances, we respectfully submit that a new trial is mandated.

## **<u>CONCLUSION</u>**

For the reasons set forth herein, and in the motion papers previously filed by counsel on January 27th and June 22nd of 2020, Edward Mangano's motion for a new trial should be granted.

Dated:  Garden City, New York
    May 14, 2021

          Respectfully submitted,

       By: <u>/s/  Kevin J. Keating</u>
         Kevin J. Keating, Esq.
         Matthew W. Brissenden, Esq.
         *Counsel for Edward Mangano*
         666 Old Country Road, Suite 901
         Garden City, New York 11530
         (516) 222-1099